**Edward A. FELD, Respondent,**

v.

**Maurice FRANKEL and Sylvia Frankel, Appellants.**

No. 48359.

Supreme Court of Missouri,

Division No. 2.

Nov. 13, 1961.

Motion for Rehearing or to Transfer to Court en Banc Denied Dec. 11, 1961.

**756**

Heege & Heege, George Heege, III, Clayton, Joseph G. Stewart, St. Louis, of counsel, for appellants.

George R. Gerhard, St. Louis, for respondent.

BARRETT, Commissioner.

In this personal injury action by a tenant to recover $27,500 damages from his landlord there was a jury verdict for the defendants, the trial court granted the plaintiff-tenant a new trial and the defendant-landlords have appealed. It is the appellants' contention that the court erred in submitting the case to the jury because the plaintiff "failed to adduce substantial evidence to support his theory of the case" in that he failed to show "that a dangerous condition existed which defendants would be required to repair or of which they would be required to warn" a tenant. In this connection it is urged that there is no substantial evidence from which it could be said that the defendants knew or should have known of the condition in time to have repaired it or to have warned plaintiff. In any event, it is said that the plaintiff had full knowledge of the dangerous condition and failed to observe it, especially when there was an equally convenient safe way for him to travel, and, therefore, that he was guilty of contributory negligence as a matter of law.

The appellants, Maurice and Sylvia Frankel, have owned a brick building at the corner of Eiler Street and Virginia Avenue since 1954. On the ground floor there is a barbershop and a tavern and on the second floor there are two three-room apartments. The plaintiff Feld and his wife operated the tavern and lived in one of the apartments; they became tenants of these parts of the premises through the assignment of a written lease from Feld's brother-in-law, Haselhorst, in June 1957. There is a stairway entrance to the apartment on Eiler Street and there is also a door and stairway entrance at the rear of the building. And across the rear of the building there is a five-foot concrete sidewalk which connects with the public sidewalk on Eiler Street. The sidewalk across the rear of the building slopes to the yard

and because two of the five-foot slabs are about six inches lower than the other slabs of concrete there is "a depression . * * * six to seven inches deep" over an area "about four by six or seven" feet. During the night of December 31, 1957, or the early morning hours of January 1, 1958, accumulated water in the depression froze. On January 1, about 4 a. m., the Felds closed the tavern and with friends went to church, ate breakfast and about 6 a. m. returned to the Eiler Street side of the building, intending to enter the apartment through the rear entrance. It was then dark, but Mr. Feld saw the morning paper three or four feet from the sidewalk in the grassy plot of the yard and as he walked towards the paper stepped on the ice, fell and was injured.

■ In these briefly noted circumstances it is not necessary to again set forth the well-known general rules concerning the tort liability of a landlord to his tenant. The general rules, with specific applicability to ice and snow, are set forth in an annotation, 26 A.L.R.2d 610, "Landlord's liability for injury or death due to ice or snow in areas or passageways used in common by tenants." And see in the same volume, 26 A.L.R.2d 468, "Landlord's liability for injury or death due to defects in exterior stairs, passageways, areas, or structures used in common by tenants" and in 25 A. L.R.2d 364, an annotation covering injuries inside rented buildings. It is sufficient at this point to note that the Frankels had owned the property for more than five years, renting parts of it to different tenants and their use of the sidewalk at the rear of the building was in common. The consequence of the relationship and of this latter fact is that the Frankels, as landlords, were under a duty, in view of its contemplated use, to exercise reasonable care to maintain the sidewalk in a reasonably safe condition. And the problem here is whether under all the circumstances it could be found that that duty has been breached. 26 A.L.R.2d l. c. 614; Taylor v. Hitt (Mo.App.), 342 S.W.2d 489. The ap-

pellants say that the concrete was not broken, that it merely sloped to the grass where it was lower at the west edge, and then they pose the question: "Does the fact that in the early morning of January 1, 1958, there was ice standing in the area created by the slope and the natural contour of the yard indicate a dangerous condition?" A case apparently in this category is Gibson v. Prudential Insurance Co. of America, 258 App.Div. 740, 15 N.Y.S.2d 100.

■ The difficulty with the appellants' posture is that, as indicated, the plaintiff's evidence was that two of the slabs of concrete were about six inches lower than the other sections of the concrete sidewalk, thus creating a "depression" six or seven inches deep over an area four by seven feet. The Felds moved into the property in June 1957 and Mr. Feld said "that depression, of course, was there to the best of my knowledge at the time it was taken over." Mrs. Feld said, since they had lived there, that she had seen an accumulation of water in the area, "Many times I went out and had to sweep it off." Upon this evidence as to the nature and cause of the "depression" a jury could find that the hazard and injury were caused by an accumulation of frozen water in a common passageway "where the condition has arisen *artificially* as a result of the landlord's negligence in maintaining either the common passageway itself or some other part of the premises in a defective condition." 26 A.L.R.2d l. c. 614, 620. So far as applicable to this particular phase of the case the supported hypothesis of the plaintiff's case was that "the sidewalk mentioned in evidence was depressed and therefore collected water and that such collection, if any, froze into ice in cold weather rendering said sidewalk dangerous and not reasonably safe for the use of defendants' tenants." In view of the known condition of sidewalks in general, the defect here may appear to be trivial and the condition common, but it was nevertheless a permissible inference that the condition was artificially created and that it was hazardous, at least on occasion. In quite sim-

ilar circumstances, in Robinson v. Belmont-Buckingham Holding Co., 94 Colo. 534, 31 P.2d 918, it was held that the landlord's negligence was a jury question. In Taylor v. Hitt, supra, a tenant washing clothes in an apartment house basement was injured when she stepped into or slipped on the depression forming the basement drain as well as the drain for her washing. The depression was fifteen inches square, three to four or five inches deep, and it was held that the landlord's negligence was a jury question.

In the five years the Frankels had owned the property they had visited or inspected it three times and they said positively that there were no defects in the sidewalk, that it gently sloped to and was even with the grass. Mr. Frankel examined the walk "around Christmas of 1957," and they were there again in the summer or December 1958. But, if the condition of the sidewalk and the depression was as Mr. and Mrs. Feld described it the Frankels obviously should have had knowledge of the fact of the defect and its hazard. 32 Am.Jur., Sec. 694, p. 571; Peterson v. Brune (Mo.), 273 S.W.2d 278. The Eiler Street stairway may have been a safer entrance but the plaintiff was not bound to use it. Roman v. King, 289 Mo. 641, 645, 233 S.W. 161, 165, 25 A.L.R. 1263.

While Mr. Feld described and of course had seen the depression, he says that he had not seen ice or water collected in it even though "once or twice" he had seen his wife sweeping water out of it. He did not recall any rain or snow on the night of December 31, or even the day before, or in the morning hours of January 1. He did know that the temperature had dropped and that it was much colder when he left the tavern in the morning. In describing his fall Mr. Feld said that he was walking at a normal gait, that he had walked eight or ten feet from the corner of the building, looking straight ahead and did not see the ice. The morning paper was "on the other side" of the ice and he had not reached the paper. After the fall he saw that the four

by seven foot area was covered by about five inches of ice. During his cross-examination he said that he saw the ice before he fell and that as he walked across it he fell. Subsequently he said, "Well, I saw it only when I attempted to walk and the minute I set my foot down I hit the ice and just with that, well, my legs gave out from under me and I broke my leg, I slipped. Q. What I want to ask you is this: you say you saw the ice. How far away from the ice were you when you first saw it? A. I was just attempting to step on it, I was in the act of stepping on it." On recross-examination there were these questions and answers:

"Q. What you're saying now is that you saw the ice just as you got on it, is that correct? A. As I made an attempt to step down, yes. * * *

"Q. You didn't see the ice as I understand it when you were some two feet away from it, is that correct? A. No.

"Q. You didn't see it when you were a foot away from it? A. No, sir.

"Q. Which foot was almost on the ice when you saw it? A. The left foot.

"Q. And did you put the left foot down and then move your right foot before you fell? A. Well, that I couldn't tell you definitely because it all happened in a split second. * * *

"Q. You may have taken one or two or three (steps), is that correct? A. Well, I may have but I doubt it very much because the minute I stepped on that ice my foot slipped out underneath me."

In these circumstances it may not be said that the plaintiff was guilty of contributory negligence as a matter of law. O'Neill v. Sherrill (Mo.App.), 254 S.W.2d 263, 268; Taylor v. Hitt (Mo.App.), 342 S.W.2d l. c. 496. "The mere fact alone, however, that the tenant is aware of the defective condi-

tion of the portion of the premises which it is the duty of the landlord to repair does. not, as a matter of law, make it contributory negligence to continue to use the same if it reasonably appears that he might safely do so with the exercise of care, so that, if a tenant is injured under such circumstances, the question of contributory negligence should be submitted to the jury." Fabel v. Boehmer Realty Co. (Mo.App.), 227 S.W. 858, 859–860; 26 A.L.R.2d 1. c. 639.

The plaintiff and the defendants relied on the same climatological data. On December 31, 1957, .34 of an inch of liquid precipitation was measured at the weather bureau's office on Twelfth and Market Streets. All except a trace (less than .005 of an inch) fell prior to 3:00 a. m. "and consisted of rain or rain and snow mixed and *the snow melting as it fell.* (Emphasis supplied.) Very light rain fell from 10:10 a. m. to 11:15 a. m. and very light snow from 11:25 a. m. to 2:10 p. m. Only a trace an amount too small to measure fell during the latter two periods. * * * The temperature was above freezing during most of the morning of December 31st ranging from 34 to 38 degrees prior to 11 a. m. but started falling before noon and had dropped to 30 degrees at 12 p. m. It continued to fall throughout the afternoon and night. At midnight it was 15 degrees and at 6 a. m. the reading on January 1, 1958 was 12 degrees. * * * No precipitation was recorded on January 1st of 1958." There was no other evidence as to the weather in general but the appellants say that from these records the jury could find "that with precipitation on the ground with the severe drop of temperature the general condition would be icy." While these weather bureau records may explain the accumulation and freezing of water in this particular "depression" or even in other depressions over the city they do not support the defendants' claim that there was evidence of a general or natural accumulation of snow or ice (Woodley v. Bush (Mo. App.), 272 S.W.2d 833) and we are therefore not concerned with the problem of whether the natural accumulation of snow and ice rule should be "subsumed" .(26 A. L.R.2d 1. c. 614) under the general duty of care imposed upon the landlord. In the Woodley case the weather bureau records showed "intermittent periods of *freezing rain and snow* from the 19th of December, 1951, up to and including December 26, which was the day that the plaintiff fell," as she walked across a grassy backyard, it may be added.

The important thing here is that the defendants offered and the court gave instruction 4 which told the jury that there was no duty on them "to keep the said sidewalk free of a natural and general condition of ice on said sidewalk, *and if you find and believe from the evidence that the plaintiff fell and was injured from a natural and general condition of ice* on said sidewalk, and if you find and believe from the evidence that the said sidewalk was in a reasonably safe condition for use at the time plaintiff fell and was injured, *except from a natural and general condition of ice thereon,* then the Court instructs you that plaintiff is not entitled to recover and your verdict must be for the defendants." As indicated, there was no evidence upon which to base this verdict-directing instruction and in the circumstances it may have been misleading and confusing. In any event it was erroneous and justified the court's granting plaintiff a new trial. Gundelach v. Compagnie Generale Transatlantique (Mo.), 41 S.W.2d 1; O'Neill v. Sherrill (Mo.App.), 254 S.W.2d 1. c. 269; 88 C.J.S. Trial § 382(b) (3), p. 997. In this view of the appeal it is not necessary to consider whether other instructions were also erroneous, accordingly, the order is affirmed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.