**Nonley MAXWELL, Plaintiff–Respondent,**

v.

**CITY OF HAYTI, Defendant–Appellant.**

No. 21983.

Missouri Court of Appeals,
Southern District,
Division Two.

Jan. 22, 1999.

Motion for Rehearing or Transfer Denied Feb. 16, 1999.

Application for Transfer Denied March 23, 1999.

Joseph C. Blanton, Jr., Bryan E. Nickell, Blanton, Rice, Sidwell & Nickell, L.L.C., Sikeston, Attorneys for Appellant.

Gary B. Brewer, Ward & Reeves, Caruthersville, Attorneys for Respondent.

PHILLIP R. GARRISON, Chief Judge.

Nonley Maxwell ("Plaintiff") alleged that he fell on accumulated ice and snow on a sidewalk in the City of Hayti ("City") on February 14, 1997. He settled a claim against an adjoining owner for $4,000, and then filed suit against City. In his petition, he alleged that snow which had fallen two to four days prior to his fall had frozen, leaving a slick and icy sidewalk that was not reasonably safe for the public; that City knew or should have known of the unsafe condition; and that City failed to use ordinary care to remedy the unsafe condition either by removing the ice, salting it, barricading it, or warning of the unsafe condition. A jury returned a verdict in Plaintiff's favor in the amount of $25,000, and the court entered judgment on that verdict after deducting the amount of the prior settlement. City appeals, contending, among other things, that the trial court erred in refusing to give its proffered jury instruction. We reverse.

City complains that the trial court erred in refusing to give the following not-in-MAI affirmative converse jury instruction:

> You must not assess a percentage of fault to [City] if you believe that, at the time Plaintiff fell, there existed throughout [City] a general condition of ice, and the condition of said [City's] sidewalk was not a special, isolated condition.

An affirmative converse instruction is one which presents a hypothetical ultimate issue which, if true, would defeat a plaintiff's claim. *Hiers v. Lemley,* 834 S.W.2d 729, 734 (Mo. banc 1992). Such an instruction must be supported by independent evidence, and is appropriate where the verdict director assumes as true or omits a disputed ultimate issue. *Id.* at 734–35.[1]

A city has a non-delegable duty to maintain its sidewalks in a reasonably safe condition for use by the public or to warn of dangers and defects in those sidewalks. *Schweizer v. City of Maplewood,* 784 S.W.2d 842, 843 (Mo.App. E.D.1990). The parties here seem to agree, however, that a possessor of land has no duty to remove snow or ice on outside areas where the snow or ice accumulated naturally as a result of general weather conditions within the community. *See Willis v. Springfield Gen. Osteopathic Hosp.,* 804 S.W.2d 416, 419 (Mo.App. S.D. 1991). This general rule applies to a variety

---

1. The Missouri Supreme Court warned about the use of affirmative converse instructions in *Hiers,* saying:

   A circumspect defense lawyer should be hesitant in giving an affirmative converse instruction. We reiterate that such an instruction should only be given if supported by the evidence. The instruction is suspect unless the converse submits a contested ultimate issue that was omitted from or assumed as true in the verdict director. As previously noted, the judicial landscape is littered with reversals and retrials in cases where affirmative converse instructions were given.

   834 S.W.2d at 736.

of possessors of land including municipal corporations. *Id.* In fact, Plaintiff admits in his brief " that a city has no duty to remove snow and ice that accumulates naturally on a city sidewalk as a result of general weather conditions of snow and ice," citing *Walsh v. City of St. Louis*, 346 Mo. 571, 142 S.W.2d 465, 466 (1940).

City correctly points out that instructions substantially similar to its proffered instruction were given in cases such as *Ellis v. Jurea Apartments, Inc.*, 875 S.W.2d 203 (Mo. App. S.D.1994); *Willis*, 804 S.W.2d 416; and *Carden v. Lester E. Cox Medical Center*, 519 S.W.2d 338 (Mo.App. S.D.1975). Each of those cases were affirmed on appeal. In *Willis*, we said that a similar instruction properly submitted the fact issue of whether the accumulation of ice was the product of a general condition in the area or an isolated condition unique to the location of the fall. 804 S.W.2d at 423. In *Carden*, we held that a similar instruction was appropriate to thoroughly instruct on all the factual issues. 519 S.W.2d at 342. In *Ellis*, the giving of a similar instruction was held not to be plain error. 875 S.W.2d at 206–207.

Plaintiff argues, however, that his verdict-directing instruction patterned after MAI 31.16 "correctly submitted to the jury [City's] duty and submitted all ultimate facts necessary for a jury to return a verdict in favor of plaintiff." [2] He also argues that City's affirmative converse instruction "does not set forth an ultimate fact that was omitted from plaintiff's verdict-directing instruction, but merely submits to the jury evidentiary detail already subsumed within plaintiff's verdict-directing instruction with regard to a city's duty to use ordinary care to make the city's sidewalks reasonably safe." This argument is effectively refuted by *Willis*, where a similar verdict-directing instruction was given, yet this Court approved the giving of an affirmative converse instruction substantially similar to that in issue here.

The main issue in this case, however, revolves around whether there was substantial evidence to support City's tendered instruction, i.e. whether there was substantial evidence that the condition of the sidewalk where Plaintiff fell was the product of a general condition in the area or one which was isolated. In considering whether an instruction was supported by the evidence, we view all the evidence in the light most favorable to the party offering the instruction, and give that party the benefit of all favorable inferences reasonably drawn therefrom and disregard evidence to the contrary. *Kilgore v. Linville*, 733 S.W.2d 62, 63 (Mo.App. E.D. 1987). *See also Oldaker v. Peters*, 817 S.W.2d 245, 251–52 (Mo. banc 1991).

In this case, City presented the testimony of Cleat Stanfill, an employee of the Department of Commerce, whose job was to gather weather statistics in Pemiscot County. Mr. Stanfill's job included recording temperatures, current conditions, rainfall, snow fall, and ice accumulation at 5:30 A.M. each day at a location three miles east of City. He testified that on February 14, 1997 (the day of Plaintiff's fall), his readings indicated that the temperature was 30 degrees; that there had been snow, sleet and rain in the last 24 hours; and that there was three inches of snow on the ground.

Plaintiff also introduced climatological records for Kennett and Portageville, Missouri. We take judicial notice of the geographical location of cities in the State and the approximate distance between them. *Walsh v. Table Rock Asphalt Construction Co.*, 522 S.W.2d 116, 118, n. 1 (Mo.App. Spfd.1975). Accordingly, we judicially know that Kennett is approximately 17 miles west and Portageville is approximately 15 miles north of City. The climatological records demonstrated that Kennett had 4 inches of snow and ice in the 48 hours prior to 7:00 A.M. on February 14, 1997, at which time

---

**2.** That instruction read:

In your verdict you must assess a percentage of fault to defendant, whether or not plaintiff was partly at fault, if you believe:

First, there was ice on the sidewalk, and as a result, the defendant's sidewalk was not reasonably safe, and;

Second, defendant knew or by using ordinary care could have known of this condition in time to remedy such conditions, and,

Third, defendant failed to use ordinary care to remedy such condition, and,

Fourth, as a direct result of such failure, plaintiff sustained damage.

there was 4 inches of snow and ice on the ground. The records also indicated that at 8:00 A.M. on February 14, 1997, Portageville had 5 inches of snow or ice on the ground and there had been 6.1 inches of snow, ice pellets or hail during the preceding 24–hour period.

■ Although both the climatological records and Mr. Stanhill's testimony were admitted without objection, Plaintiff now argues that they were taken several miles from City and thus provide no substantial evidence about the existence of a general condition of ice at the area of Plaintiff's fall. *Jones v. Wilbanks,* 735 S.W.2d 409 (Mo.App. S.D. 1987), however, involved an issue about the temperature at the time and location of an accident scene. There, the plaintiff sought to introduce climatological data from weather stations located at distances varying from 14 to 50 miles from the accident scene. The appellate court held that those records were relevant and admissible. *Id.* at 412. Similarly, in *Schucker v. Missouri Department of Natural Resources,* 703 S.W.2d 1 (Mo.App. E.D.1985), there was an issue about the extent of rainfall which had occurred at an accident scene. The trial court admitted climatological records taken 65 to 70 miles from the scene, and the appellate court affirmed that decision, stating that the weight to be given to those records was for the jury. *Id.* at 4.

Plaintiff cites *Feld v. Frankel,* 351 S.W.2d 755 (Mo.1961), contending that there the Missouri Supreme Court rejected the contention that "similar climatological records" provided substantial evidence of a general and natural accumulation of snow and ice. In that case, the plaintiff fell on ice which had accumulated in a depression in a sidewalk. The climatological records indicated that there had been .34 of an inch of rain, or rain and snow mixed, with the snow melting as it fell, more than 27 hours before the plaintiff's fall. After that time, there was only a trace of precipitation (less than .005 of an inch), and the temperature during the day of the plaintiff's fall had been as high as 38 degrees. The Court found that the evidence did not support the giving of the defendants' instruction which submitted the issue of whether the ice on which plaintiff fell was part of a natural and general condition of ice. The court said that the records would explain the freezing of water in this and other depressions "over the city," but would not support a claim that there was a general or natural accumulation of snow or ice. *Id.* at 759. *Feld,* however, involved no issue about the proximity of the climatological readings to the scene of the fall. Likewise, there the record reflected a small amount of precipitation 27 hours before the plaintiff's fall, but did not indicate a continued generalized condition of ice near the time of the incident in question. We do not believe that *Feld* is controlling under the facts of this case.

In the instant case, we gather from the record that Plaintiff's fall occurred prior to 11:00 A.M. on February 14, 1997. The climatological records received in evidence indicated that within approximately three to five hours prior to Plaintiff's fall, there was a general condition of snow and ice on the ground, not only near City, but in surrounding towns as well. Accordingly, the climatological evidence could support a finding that there was a general condition of snow and ice at the time of Plaintiff's fall.

Viewing the evidence in the light most favorable to City, and giving it the benefit of all reasonable inferences, we hold that there was sufficient evidence to support the giving of City's instruction and that the trial court erred in not giving it. Accordingly, the judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion. Because the issue of the refusal of this instruction is dispositive of this appeal, we do not reach City's other points relied on.

MONTGOMERY, J., and BARNEY, J., concur.