**Charles J. McMULLIN,
Plaintiff–Appellant,**

v.

**Robert R. BORGERS,
Defendant–Respondent.**

**Nos. 57105, 57146.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Feb. 26, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied April 8, 1991.

Application to Transfer Denied
May 3, 1991.

Charles J. McMullin, St. Louis, for plaintiff-appellant.

Ted Frank Frapolli, Dennis B. Mertz, St. Louis, for defendant-respondent.

STEPHAN, Judge.

This appeal was brought by plaintiff, an attorney-at-law, representing himself on appeal. Plaintiff's claims were based on an assignment to him from Dorothy Cornelison and involved a Mercantile Trust Company checking account which had been held jointly in the names of decedent, Joseph Gangloff, and Dorothy Cornelison, Gangloff's sister-in-law. In November 1981, while decedent was hospitalized and Mrs. Cornelison was out of the state, the account was closed and a new one opened, this time jointly in the names of decedent and Robert Borgers, defendant.

Plaintiff's counts III (undue influence), IV (fraud) and VIII (conspiracy) were presented to the jury. Count VII, a claim in equity for imposition of a constructive trust, was taken by the court with the evidence. On April 14, 1989, the jury returned a verdict in defendant's favor on the undue influence and fraud counts. The trial court had previously sustained defendant's motion for directed verdict at the close of plaintiff's case on the conspiracy count. The trial court did not rule on Count VII, the count in equity for imposition of a constructive trust.

Plaintiff filed a motion for new trial or, in the alternative, for judgment notwithstanding the verdicts on May 1, 1989. The motion was overruled on July 27, 1989. Plaintiff's appeal was filed August 1, 1989.

Defendant filed a cross-appeal based on the dismissal of his counterclaim for abuse of process. On April 21, 1983, the trial court sustained plaintiff's motion to dismiss the counterclaim for failure to state a cause of action for which relief could be granted. Defendant then filed his first amended counterclaim. It was dismissed on March 9, 1984. On this court's own motion, defendant's cross-appeal was consolidated with plaintiff's appeal.

Plaintiff has filed a motion to dismiss defendant's notice of appeal which we have taken with the case. Plaintiff asserts that defendant cannot raise his counterclaim by reason of res judicata, waiver, laches and estoppel.

Defendant's counterclaim was raised at the time plaintiff's first petition was filed. The parties went to trial, but the jury was unable to reach a verdict and a mistrial was declared. There was no final judgment.[1]

Rule 81.06 (Repealed) is applicable here because the dismissal order was entered in 1984. The trial court held a separate hearing on defendant's counterclaim without a jury. The question for us is whether the counterclaim arose out of the same transactions, occurrences or subject matter as the other claims. If so, "the judgment entered shall not be deemed a final judgment for purposes of appeal ... unless specifically so designated by the court in the judgment entered." Rule 81.06 (Repealed).

We have reviewed plaintiff's petition and defendant's counterclaim. All claims arose out of the same set of facts. The trial court did not designate the dismissal as final. Defendant is, therefore, not barred from filing his cross-appeal. Plaintiff's motion to strike defendant's notice of appeal is denied.

## FACTS

Decedent, an unmarried person, died on July 26, 1982 at the age of 83. He had been employed as a railroad clerk for many years, but had amassed an estate worth

1. Defendant did appeal (# 50846), but the appeal was dismissed for lack of a final judgment.

over $1,000,000.00 through stock market transactions. Decedent was a sophisticated investor. He initiated his own transactions and made his own decisions, even though he retained a stock broker.

Defendant and decedent met in 1953. They kept in touch through the years, primarily through defendant's aunt and uncle. After 1973, defendant began taking care of some matters, both business and personal, for decedent.

Decedent prepared his last will and testament on October 19, 1981.[2] It provided that the residue of the estate would be divided as follows:

> To Dorothy Cornelison, my sister-in-law, 10 percent. To Claudette Gangloff, my niece, 29 percent. To Charles Gangloff, my nephew, 30%. To Ingrid Cheryl Gangloff, my niece, 11 percent. Phyllis Weber, my cousin, 2 percent. Robert Borgers, my friend, 15 percent. Marie Eckert, my faithful friend, 3 percent.[3]

Decedent entered the hospital in October 1981. Defendant testified that, during that time, decedent decided that defendant's name should be added to the checking account at Mercantile. Defendant attempted to make the change with a power of attorney, but was told by bank personnel that it could not be changed in that manner. Defendant then took the signature cards to decedent and returned them to the bank, which had the effect of opening a new account. Decedent closed out the old account by writing a check payable to defendant for the total amount in the account. That money was deposited in the new account. The result was that Dorothy Cornelison's name was removed and defendant's name added as joint depositor with decedent. After that, defendant would pay decedent's bills with the money from the joint account.

Plaintiff presented evidence suggesting that decedent was incompetent at the time Dorothy Cornelison's name was removed from the bank account. He also attempted to show that defendant relied on a confidential relationship with decedent in order to defraud Mrs. Cornelison out of the remains of the bank account.

Plaintiff and defendant have presented us with a lengthy and disorganized record on appeal. Plaintiff raises eighteen points on his appeal, and defendant presents us with two others on the cross-appeal. There are two volumes of transcript and five separate legal files. Many of plaintiff's points are repetitious. In addition, some points are in violation of Rule 84.04. Respondent, on the other hand, failed to respond to many of plaintiff's points. There was very little applicable law presented in either brief.

We will not dismiss the appeal in its entirety for violations of Rule 84.04 because we intend for this litigation to come to an end. We will, however, consider the points in what we consider is the most logical manner.

### PLAINTIFF'S APPEAL

Plaintiff's first and third points both argue that the trial court instructed the jury to consider the evidence pursuant to a higher burden of proof than is required. Plaintiff did not include the objectionable instructions in the argument portion of his brief pursuant to Rule 84.04(e). He argues that it was unnecessary for him to do so because the instructions were incorporated by reference and attached as an addendum to his brief.

With the addendum plaintiff's brief exceeds the page limitation set out in Rule 84.04(i). In addition, Rule 84.04(e) clearly states that, "[i]f a point relates to the giving, refusal or modification of an instruction such instruction shall be set forth in full *in the argument portion of the brief.*" (Emphasis supplied). Rule 84.04 is to be strictly enforced. *East v. Landmark Central & Trust Company,* 585 S.W.2d 222, 225 (Mo.App.1979). By not placing the instructions in the argument

---

2. This will was decedent's third. Defendant's percentage increased from 12% to 14% to 15% in each successive will decedent prepared.

3. This will was admitted to probate court in the City of St. Louis and the assets distributed in accordance therewith.

portion of his brief plaintiff has failed to preserve his points on appeal. *McKee v. Wilmarth*, 771 S.W.2d 955, 957 (Mo.App. 1989). Since the instructions were included in the brief as an addendum, we will review the points for plain error pursuant to Rule 84.13(c).

■ Plaintiff argues that the trial court should not have read Instruction No. 4 to the jury but, instead, should have given plaintiff's Instruction C. Instruction No. 4, MAI–3d 3.04 (modified), reads as follows:

The burden is upon Plaintiff to cause you to believe by clear and convincing evidence that the Defendant by undue influence caused the transfer of funds referred to in Instruction No. 5. In determining whether or not you believe any such proposition, you must consider only the evidence and the reasonable inferences derived from the evidence. If the evidence in the case does not cause you to believe a particular proposition submitted, then you cannot return a verdict requiring belief of that proposition.

Plaintiff's Instruction C, MAI–3d 3.01, reads as follows:

In these instructions, you are told that your verdict depends on whether or not you believe certain propositions of fact submitted to you. The burden of causing you to believe a proposition of fact is upon the party who relies upon that proposition. In determining whether or not you believe any such proposition, you must consider only the evidence and the reasonable inferences derived from the evidence. If the evidence in the case does not cause you to believe a particular proposition submitted, then you cannot return a verdict requiring belief of that proposition.

Plaintiff argues that Instruction No. 4 placed a radically higher burden of proof upon him than is required by the authorities. We disagree.

Plaintiff's petition asserted causes of action of fraud and undue influence in transferring the Mercantile Bank account. By pleading such, plaintiff must prove fraud or undue influence by clear, cogent and convincing evidence. *Barrett v. Flynn*, 728 S.W.2d 288, 291 (Mo.App.1987). *See also, Lesh v. Lesh*, 718 S.W.2d 529, 532 (Mo.App.1986); *Daniels v. Champion*, 592 S.W.2d 869, 869 (Mo.App.1979).

Plaintiff argues these cases are inapplicable because they were court tried and no instructions were given. This argument is specious. Plaintiff is attempting to convince us that the burden of proof in an action will change simply because a jury is present. Instructions are given to inform the jury about the applicable law; instructions are unnecessary in a court tried action because the trial court knows the law. The law is the same in either case.

Plaintiff also argues that the case *Estate of Stanley*, 655 S.W.2d 88 (Mo.App.1983) is applicable. There, the mother's funds were placed in a joint account with her son and daughter-in-law. Her other children were thus excluded because the account would automatically transfer to the survivors. The others contested by filing a petition to discover assets. The court held that "[t]he contention of the appellants that for submission, undue influence must be shown by clear, cogent and convincing evidence is simply misplaced." *Id.* at 91.

*Stanley* is distinguishable. Plaintiff here did not file a petition to discover assets, rather he sought to set aside the transfer of a bank account. The court in *Stanley* also said, "[t]he undue influence which will set aside a conveyance in equity must indeed, as cancellation for any other reason, be proven by clear, cogent and convincing evidence." *Id.*

The trial court did not err in instructing the jury that plaintiff's burden of proof was "clear and convincing evidence." Instruction No. 4 was properly sustained and plaintiff's Instruction C properly denied. Points I and III are denied.

Plaintiff's second point argues that "[d]efendant compounded the reversible error in giving burden of proof Instruction 4, by advising the jury in final argument that Instruction 4 was the law and they should follow the same, thereby misstating the law."

This point does not state wherein and why the trial court erred. It does not even mention a trial court ruling. The point is not preserved for appeal. Rule 84.04(d); *Thummel v. King*, 570 S.W.2d 679, 685–686 (Mo. banc 1978); *Hoffman v. Koehler*, 757 S.W.2d 289, 292 (Mo.App.1988).

Even if it were preserved, there was no error. Instruction No. 4 was the applicable law and defense counsel correctly stated it during his closing argument. Point II is denied.

■ Plaintiff's fourth and fifth points assert trial court error in its failure to give either plaintiff's verdict director, Instruction A, instead of Instruction No. 5, or else plaintiff's Instructions B and D. Once again, plaintiff violated Rule 84.04(e) by failing to include the instructions in the argument portion of his brief, but, since they were included in the addendum, we will review for plain error.

Instruction No. 5 (not in MAI) reads as follows:

Your verdict must be for Plaintiff if you believe:

First, Defendant exerted undue influence on Joseph J. Gangloff,

Second, as a direct result of such undue influence Joseph Gangloff's funds were transferred into a joint bank account with Defendant with right of survivorship, and

Third, Dorothy Cornelison's name had been on said account and she assigned her claims to said bank accounts to Plaintiff, and

Fourth, Plaintiff, as assignee of Dorothy Cornelison, was thereby damaged.

The phrase "undue influence" as used in this instruction means such influence as destroys the free choice of said Joseph J. Gangloff.

The term "assignee" means a person to whom a right is assigned, that is, the one to whom an assignment is made.

Plaintiff's Instruction A (not in MAI), refused by the trial court, reads as follows:

Your verdict must be for Plaintiff Charles McMullin and against Defendant Robert Borgers on Plaintiff's claim to the joint bank account if you believe:

First, Defendant exerted undue influence upon Joseph J. Gangloff, and

Second, as a direct result of such undue influence Joseph Gangloff's funds were transferred into a joint bank account with defendant with rights of survivorship, and

Third, as a direct result thereof defendant received and withheld funds belonging to Dorothy Cornelison who assigned her claim thereto to Plaintiff, as assignee.

The phrase "undue influence" as used in this instruction means such influence as destroys the free choice of said Joseph J. Gangloff.

The term "assignee" as used in this instruction means a person to whom a right is assigned, that is, the one to whom an assignment is made.

Plaintiff's proposed Instructions B and D read as follows:

### Instruction B (Not in MAI)

Your verdict must be for Plaintiff Charles McMullin and against Defendant Robert Borgers on Plaintiff's claim to the joint bank account if you believe:

First, that Joseph Gangloff was of unsound mind when Dorothy Cornelison was removed from his bank accounts, and,

Second, as a direct result of such unsoundness of mind, Joseph Gangloff's funds were transferred into a joint bank account with Defendant with rights of survivorship, and

Third, as a direct result thereof defendant Robert Borgers received and withheld funds belonging to Dorothy Cornelison who assigned her claim thereto to plaintiff Charles McMullin, as assignee.

### Instruction D (Not in MAI)

The term "unsoundness of mind" as used in these instructions means such mental impairment as to render the subject incapable of understanding and of acting with discretion in the ordinary affairs of life.

Plaintiff argues that Instruction No. 5 was confusing and misleading to the jury. He asserts that it is a departure from the verdict director approved in *Estate of Stanley*, 655 S.W.2d 88 (Mo.App.1983), and that it fails to conform to the evidence. He also argues that Instruction No. 5 refers to damages which is inappropriate in an undue influence case.

When no MAI instruction is available the jury must be instructed on the applicable rules of law under an appropriate instruction which follows the law and is so composed that a jury of ordinary people can understand it. *Biever v. Williams*, 755 S.W.2d 291, 295 (Mo.App.1988). *See also, Massey–Ferguson Credit Corp. v. Black*, 764 S.W.2d 137, 144 (Mo.App.1989). The instruction must be "simple, brief, impartial, free from argument, and shall not submit to the jury or require findings of detailed evidentiary facts." Rule 70.02(e). A verdict directing instruction must submit only ultimate facts. *Anderson v. Stanley*, 753 S.W.2d 98, 100 (Mo.App.1988).

The verdict director submitted here is based on Section 362.470, RSMo, relating to joint deposits. The instruction does track the statute. It did not require the jury to find detailed evidentiary facts, only ultimate facts: that defendant exerted undue influence on decedent; that, because of such undue influence, decedent transferred funds into a joint account with defendant; that the original account had Dorothy Cornelison's name on it; that she assigned her cause of action to plaintiff; and, that plaintiff was thereby damaged. The instruction clearly maps out what the jury must find in order to conclude there was undue influence resulting in the transfer of the account.

Plaintiff's Instructions B and D, on the other hand, are more difficult to understand because they do not logically set out the ultimate facts the jury must find with sufficient detail. They also do not set forth a claim of "undue influence" on which plaintiff's claim was based.

We also note that plaintiff's Instruction A is substantially similar to Instruction No. 5. We fail to see how it would have been more beneficial to the jury than the instruction submitted. Finding no error, plain or otherwise, points IV and V are, therefore, denied.

Plaintiff's next three points are all concerned with the admission of evidence at trial. These points read as follows:

VI. The court erred in overruling plaintiff's motions in limine and objections to defendant's evidence including collateral matters and sources which prejudiced plaintiff's case.

VII. Reversible error occurred when the court allowed defendant to relitigate the tortious interference counts and the probate claim award barred by collateral estoppel confusing the issues.

VIII. Defendant's collateral attack on Judge Hart's judgment was gross error confusing and misleading the jury.

None of these points states with any specificity what evidence plaintiff finds objectionable. Point VIII does not identify a trial court ruling. We are not told why any of these matters are collateral or what effect they had on the outcome.

There is no doubt that these points are violative of Rule 84.04(d) and do not preserve anything for appeal. *Hoffman*, 757 S.W.2d at 292. The requirements of Rule 84.04 are mandatory and essential for the effective functioning of appellate courts. *Draper v. Aronowitz*, 695 S.W.2d 923, 924 (Mo.App.1985).

There is authority which allows us to look to the argument portion of the brief for the purpose of determining plain error. *Hoffman*, 757 S.W.2d at 292. When we did so we found that plaintiff failed to supply us with specific page references to the legal file and transcript in violation of Rule 84.04(h). It is not our duty or responsibility to spend judicial time searching through legal files, transcripts or argument in an attempt to interpret the thrust of a party's contentions and correct counsel's deficiencies. *Draper*, 695 S.W.2d at 924.

We will not consider Points VI, VII and VIII as they have not been preserved for appeal.

Points IX and X, like VI, VII and VIII, are violative of Rule 84.04. We will, however, briefly review them for plain error affecting substantial rights.

■■■■ In Points IX and X plaintiff argues that the trial court violated the collateral source rule and the rule concerning compromise and settlement when evidence was introduced indicating that Dorothy Cornelison gave $21,000.00 to plaintiff. Defendant contended that this money was paid to avoid a will contest. Plaintiff contended that the money constitutes a loan to be repaid once litigation is concluded.

■■■■ The collateral source rule is an exception to the general rule that damages in tort should be compensatory only. *Overton v. United States,* 619 F.2d 1299, 1306 (8th Cir.1980). The rule permits recovery against a wrongdoer for the full amount of damages even though the plaintiff is also compensated from a different source, such as an insurance company, which is "wholly independent" of the wrongdoer and whose payment is, therefore, collateral to his. *Id.*

We fail to see how this rule applies here. Plaintiff's claim was based on an assignment, contract not tort, from Dorothy Cornelison. We fail to see how she could collaterally compensate plaintiff for the damages she assigned to him. Moreover, the evidence was introduced to show plaintiff's motivation in bringing the lawsuit and to attack his credibility. The only evidence presented indicating undue influence was plaintiff's own testimony. His credibility was, therefore, in issue.

The same is true of the rule on compromise and settlement. There was no evidence presented indicating settlement negotiations. Plaintiff's evidence, in fact, indicated that there was no conflict between him and Dorothy Cornelison. The money was a loan, not a payoff or settlement of a dispute.

■■■■ The trial court is vested with substantial discretion in controlling and ruling on the admissibility of evidence. *Titsworth v. Powell,* 776 S.W.2d 416, 423 (Mo.App. 1989). Plaintiff, as appellant, has the burden of establishing prejudicial error on appeal; defendant does not have to establish the correctness of the trial court's rulings. *Eagleburger v. Emerson Electric Co.,* 794 S.W.2d 210, 235 (Mo.App. banc 1990). Plaintiff has failed to do so. Finding no prejudicial error, Points IX and X are denied.

Plaintiff's next point on appeal asserts that "[t]he exclusion of Dr. Singhal's entire video deposition and parts of Dr. Knowles' mandates a new trial to present same to the jury. Such deprived plaintiff of competent evidence on the mental incompetency issue." This point is in violation of Rule 84.04(d) in that it fails to identify any trial court ruling. In fact, plaintiff's entire argument fails to identify any specific ruling of the trial court.

We have reviewed plaintiff's assertions for plain error pursuant to Rule 84.13(c). We read through the depositions and each of the rulings the trial court made in conjunction therewith and find no error, plain or otherwise. Point XI is denied.

■■■■ Plaintiff next argues that the deposition testimony of Dorothy Cornelison was received in error because it was taken during the probate case when plaintiff was not a party. Plaintiff neglects to tell us what part of the deposition he objects to, but we will review the point as we understand it. We assume that plaintiff objects to statements Mrs. Cornelison made which could be considered admissions against interest.

Defendant based the admissibility of the deposition testimony on the assignment. The general rule is that an absolute assignment of an entire right or interest works as a divestiture of all right or interest of the assignor; and, for the purpose of maintaining a civil action, the assignee becomes the real party in interest. *Kershner v. Hilt Truck Line, Inc.,* 637 S.W.2d 769, 771–772 (Mo.App.1982). "Admissions against interest are those made by a party to the litigation *or by one in privity with or identified in legal interest with such party,* and admissible whether or not the declarant is available as a witness." *Neely v. Kansas City Public Service Co.,* 252 S.W.2d 88, 91

(Mo.App.1952). (Emphasis supplied). The question confronting us is whether plaintiff was in privity with Dorothy Cornelison. We think he was.

"Privity" is the mutual or successive relationship to the same rights of property. *Black's Law Dictionary*, 1361 (1968). We have been unable to find case law on privity regarding assignments, but in *State Farm Mutual v. Allen*, 744 S.W.2d 782 (Mo. banc 1988), an automobile insurer sued its insured and several other tort claimants. On the question of admissions made by the insured, our Supreme Court found that all the tort claimants stood in the shoes of the insured. *Id.* at 786. It, therefore, followed that evidence admissible against the insured, including admissions, was also admissible against the tort claimants. *Id.*

Plaintiff stands in the shoes of Dorothy Cornelison. The cause of action was hers. It now belongs to him, but only through contract. Any admissions against interest made by Dorothy Cornelison are admissible against plaintiff. Point XII is denied.

In his thirteenth point, plaintiff asserts that it was fatal error to exclude evidence regarding defendant's malfeasance and removal as personal representative of the Gangloff Estate. He claims that it was competent and retaliatory evidence. He fails to inform us why the evidence is retaliatory, but does argue that it was competent to show a common scheme and plan to acquire, by undue influence and fraud, decedent's estate and property. We will review that argument.

Plaintiff cites us to cases which state the general rule that evidence of other separate and distinct crimes is inadmissible unless it has some legitimate tendency to establish defendant's guilt of the crime charged and is competent if it tends to establish motive, intent, absence of mistake or accident, common scheme or plan, or identity of the person charged. *State v. Hodge*, 655 S.W.2d 738, 744 (Mo.App.1983). *See also, State v. Neal*, 169 S.W.2d 686, 695 (Mo.1943); *State v. Anderson*, 687 S.W.2d 643, 647 (Mo.App.1985); *State v. Heffner*, 641 S.W.2d 803, 807–808 (Mo.App.

1982). Plaintiff cites one other case which states that joinder is proper if each of the offenses charged "are based on the same act or on two or more acts that are part of the same transaction or on two or more acts or transactions that constitute part of a common scheme or plan." *State v. Campbell*, 689 S.W.2d 696, 698 (Mo.App. 1985).

This is not a criminal proceeding. Our only consideration is whether the evidence was relevant, the determination of which is largely committed to the discretion of the trial court. *Riney v. Zenith Radio Corp.*, 668 S.W.2d 610, 611 (Mo.App.1984). An offered fact is relevant if it tends to prove or disprove a fact in issue, or corroborates evidence which is relevant and which bears on the principal issue. *Lawson v. Schumacher & Blum Chevrolet*, 687 S.W.2d 947, 951 (Mo.App.1985). Relevancy is that relationship between the offered fact and fact in issue to such a degree that the truth of the offered fact makes probable the existence of the fact in issue. *Id.*

Plaintiff was attempting to prove that defendant used undue influence or procured by fraud, the transfer of the Mercantile checking account. The evidence sought to be introduced showed that defendant was removed as personal administrator of the estate. The probate court found that defendant violated his fiduciary duties to the estate which resulted in mismanagement and indebtedness to the estate. He was ordered to repay $41,950.58 to the estate.

We agree the estate was mismanaged; however, we fail to see what effect it has on the case at hand. None of the probate court's findings indicated defendant was anything but negligent. The evidence was not probative and would have prejudiced defendant. The trial court did not abuse its discretion in refusing the evidence. Point XIII is denied.

Plaintiff's next point states, "Plaintiff's proof of defendant's conspiracy was denied causing error and a new trial as plaintiff was deprived of his Count VIII submission." Plaintiff fails to present us with any trial court ruling denying his proof of

conspiracy. Rule 84.04(d). Further, he fails to present us with legal file and transcript citations in the argument portion of his brief. Rule 84.04(h).

In our discretion, we have reviewed the record for plain error affecting substantial rights pursuant to Rule 84.13(c). We found no error, plain or otherwise, on any trial court ruling regarding alleged evidence of conspiracy. Point XIV is, therefore, denied.

■ In his next point plaintiff argues that the trial court should have declared a mistrial because of juror misconduct. Plaintiff's son, attorney James McMullin, was present at the plaintiff's table during the trial. He was leaving the courthouse after the first day of trial and got on an elevator with several members of the jury, including alternate juror Moses. McMullin reported to the trial court that Moses stated, in the presence of other jurors, "that this whole proceeding was a bunch of bullshit and that—that the matter should not be in court and it should not proceed."

The trial court held an in-chambers hearing on the matter. Moses was questioned and admitted making the statement, but said he did not say it until he and McMullin had departed the elevator and were out of earshot of the other jurors. Moses apologized to the court and was subsequently removed from the jury.

The trial court asked the rest of the jury panel if anyone remembered riding on the elevator with McMullin the night before. Jurors Turner, Tree, Ridings and Sumlin remembered being present. McMullin recalled that juror Hansman was also there.

All five jurors were questioned separately. None of them heard Moses' remark. In fact, the only conversation any of them remembered came from McMullin. None of these jurors was removed from the panel.

A mistrial is the most drastic remedy for trial error and should be granted only where the incident is so grievous that the prejudicial effect can be removed no other way. *Hawkins v. Compo*, 781 S.W.2d 128, 131 (Mo.App.1989). Declaration of a mistrial based on juror misconduct is within the sound discretion of the trial court. *Green v. Lutheran Charities Association*, 746 S.W.2d 154, 157 (Mo.App.1988). The ruling of the trial court will not be disturbed absent a showing of abuse of that discretion. *Id.* A court must find that the juror misconduct prejudiced a party before it may declare a mistrial on such grounds. *Yoon v. Consolidated Freightways*, 726 S.W.2d 721, 723 (Mo. banc 1987).

The trial court did everything necessary to avoid prejudice or the declaration of a mistrial. The errant alternate juror was removed and the others were without knowledge of the remark. There was also a dispute concerning where Moses made the remark, inside or outside the elevator.

Plaintiff failed to show he was prejudiced. There was no abuse of discretion in failing to declare a mistrial. Point XV is denied.

We decline to review plaintiff's next point on appeal. It reads, "[t]he trial court's numerous evidentiary rulings alone justify a new trial as such deprived plaintiff of his competent evidence and admitted defendant's incompetent evidence." Rule 84.04(d) states, "[t]he points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous...."

Plaintiff fails to specify the rulings of which he complains and, further, neglects to state why any of the rulings are erroneous. We will not search for the "numerous evidentiary rulings." Point XVI is dismissed.

■ Next, plaintiff argues that the trial court erred in admitting extraneous evidence attacking the assignment because it had been previously determined valid in *Estate of Gangloff*, 743 S.W.2d 498, 505 (Mo.App.1987) where it was held:

The trial court correctly found petitioner to be the assignee of Legatee Cornielson (sic) and, therefore, an interested person. The insufficiency or lack of consideration paid to Legatee Cornielson (sic) and the fact that the assignment was made for

the purpose of providing a more convenient enforcement of the action do not affect the validity of the written assignment in this case.

Our problem is that we find no ruling, and plaintiff does not direct us to one, which allowed an attack on the assignment. Plaintiff seems to argue that the $21,000.00 was introduced as an attack on the assignment. We disagree.

As stated, *supra,* evidence relating to the money was competent to show plaintiff's motivation in bringing this lawsuit and to question his credibility. In fact, the trial judge stated, during an in-chambers conference, "Well, I mean this case [*Niedert v. Niedert,* 637 S.W.2d 296 (Mo.App. 1982)] does seem to hold that an assignment *for collection purposes is valid."* The trial court decided plaintiff's assignment was valid and overruled defendant's motion in limine on whether plaintiff was the real party in interest.

We find no error and deny Point XVII.

■ Plaintiff next asserts trial court error in failing to rule on Count VII in equity for imposition of a constructive trust. This count was not submitted to the jury but was taken by the court along with the evidence.

■ No appeal lies absent a final judgment. *Around the World Importing, Inc. v. Mercantile Trust Company,* 771 S.W.2d 919, 921 (Mo.App.1989). A final and appealable judgment disposes of all issues in the case and leaves nothing for future determination. *Bay's Texaco Service and Supply Company v. Mayfield,* 792 S.W.2d 50, 51 (Mo.App.1990). This is required to avoid "piecemeal presentation of cases on appeal." *Willman v. Walker,* 734 S.W.2d 283, 286 (Mo.App.1987).

Here, the finality of the judgment must be determined by what was actually done according to the content, substance and effect of the decree or order actually entered. *Neal v. Neal,* 776 S.W.2d 861, 863 (Mo.App.1989). If the judgment on the other issues in the case necessarily excludes and effectively disposes of the issue which is not specifically adjudged, then the judgment is final and appealable. *Id.*

By finding for defendant on all counts, the imposition of a constructive trust was rendered moot. The order of the trial court thus effectively disposed of all the issues, even though Count VII was not specifically adjudicated. Point XVIII is denied.

Plaintiff does raise one other point in his brief, but since it is essentially an attack on defendant's cross-appeal, we will consider it therein.

## DEFENDANT'S CROSS–APPEAL

■ In his first point, defendant argues that the trial court erred in not granting his motion for directed verdict at the close of plaintiff's case. After the motion was denied, defendant presented his own evidence. In doing so, defendant waived his motion for a directed verdict and cannot now claim error because the ruling is not reviewable by this court. *Holland v. American Republic Insurance,* 779 S.W.2d 775, 776 (Mo.App.1989).

Defendant next argues that the trial court erred in not allowing him to amend his answer to include the defense of champerty. He asserts that defendant's assignment is void as against public policy in that the evidence showed that plaintiff had no interest in the cause of action except for the assignment; plaintiff supported and maintained the action at his own expense; and, plaintiff was to receive the entire proceeds of this action pursuant to the terms of the assignment.

"Champerty" was developed at common law to "prevent officious intermeddlers from stirring up strife and contention by vexatious and speculative litigation which would disturb the peace of society, lead to corrupt practices, and prevent the remedial process of law." *Schnabel v. Taft Broadcasting Company,* 525 S.W.2d 819, 823 (Mo.App.1975). It is an agreement under which a person who has no interest in the suit of another undertakes to maintain or support it at his own expense in exchange for part of the litigated matter in the event of the successful conclusion of the cause. *Id.* Although the common law action of champerty, *eo nomine,* is rare in modern times, such conduct now finds remedy in

abuse of process, wrongful initiation of litigation and malicious prosecution actions. *Id.* at 824.

Champerty is not a defense which is available to a third party. The fact that there is an illegal and champertous contract for the prosecution of an action is no ground of defense for the defendant; it may only be used by the client against the attorney when the champertous agreement is sought to be enforced. *Courtright v. Burnes*, 13 F. 317, 319–320 (W.D.Mo.1881), aff'd 117 U.S. 582, 6 S.Ct. 865, 29 L.Ed. 991 (1886). The trial court correctly determined that champerty was not an available defense. The point is denied.

The judgment is affirmed.

REINHARD, P.J., and CRANE, J., concur.