Anna ELLIS, Plaintiff–Appellant

v.

JUREA APARTMENTS, INC., a Missouri corporation, d/b/a Chandelaque Apartments, Defendant–Respondent.

No. 18705.

Missouri Court of Appeals,
Southern District,
Division One.

March 24, 1994.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 13, 1994.

Timothy E. Gammon, Hulston, Jones, Gammon & Marsh, Springfield, for plaintiff-appellant.

Brad J. Fisher and Carol T. Aiken, Woolsey, Fisher, Whiteaker & McDonald, Springfield, for defendant-respondent.

PARRISH, Chief Judge.

Anna Ellis (plaintiff) appeals from a judgment entered following jury verdicts in favor of Jurea Apartments, Inc., (defendant) in actions for negligence (Count I), and two counts for breach of a rental agreement (Counts II and III). This court affirms.

Plaintiff occupied an apartment owned by defendant from March 1990 until January 1991. Plaintiff's apartment was in the Chandelaque Apartments complex at 2010 South Ingram Mill Road in Springfield, Missouri. Plaintiff originally occupied the apartment subject to a written lease. There was no showing that the written lease contained any provision regarding snow or ice removal. The lease was for a six-month term. It expired in August 1990. After the lease expired, plaintiff continued to occupy the apartment on a month-to-month tenancy until January 15, 1991.

During the last few days of December 1990, and the first week of January 1991, a sleet storm occurred in the city of Springfield. The Acting Director of Public Works for the city of Springfield, Mr. Charles Turner, explained:

> On December the 29th and 30th of 1990 we received a sleet storm in the city that had about between three and four inches of sleet on the entire area. It almost immediately went to a solid piece of ice, four inches of ice, and for the next three weeks, from that point up until January the 18th, we continually battled that ice.

The city had four road graders available for ice removal—it's snow plows were ineffective in removing the ice. The city was unable to make any progress in its efforts to remove ice from roadways until it hired private contractors to provide additional equipment.

On January 6 or 7, the city arranged for and began using 32 pieces of equipment for ice removal. Mr. Turner related that the

city had taken those actions only "three times in the last twenty years." The four-inch build up of ice was still on the ground on January 8, 1991. There was a "general condition of ice" in the city at that time.

Defendant had not removed the accumulated ice from common areas throughout the apartment complex. It had removed ice from an area near the entrance to its manager's office.

On January 8, 1991, plaintiff left her apartment to walk to her mailbox. She had not left her apartment for the past three or four days. Because the sidewalks between plaintiff's apartment and her mailbox were covered with ice, she chose to follow a route over a grassy area to her mailbox. She reached her mailbox and retrieved her mail. She decided to follow a different route to return to her apartment. It went over a footbridge that crossed a drainage ditch. The footbridge was ice-covered. As plaintiff crossed the footbridge, near its end, she slipped and fell backwards. She explained:

And I grabbed for the rail and the rail had ice on it and I fell. I fell backwards and I bent my finger back and broke it. And I also heard a pop in my chest.

And I crawled the rest of the way to the house, because I was afraid to get up. And I crawled the rest of the way to the house, which wasn't very far. And I crawled into the west door there and got up and went on into my apartment.

And my finger started swelling up and hurting. And I sat around and waited for a long time, but it got to hurting so bad I didn't know what to do. And it was snowing a little bit and I said, "Well, maybe I can get some grip on the snow," you get a little traction on snow.

And so I put my clothes on and went to the Cox Emergency Room. They x-rayed my hand and told me that finger was broken.

Plaintiff's back and hip hurt. Her hip was x-rayed and found to be all right. Her chest hurt. She previously had heart surgery that required her sternum to be wired together. Later, in November 1991, surgery was required to rewire her sternum. At trial, the parties stipulated that this surgery "resulted from the accident."

Plaintiff contends by her first point on appeal that the trial court erred in giving Instruction No. 11. Plaintiff claims that the instruction misstated the law; that defendant had assumed a duty to remove snow and ice and, therefore, the trial court "should either have so instructed the jury or not have given Instruction 11."

■ In addressing plaintiff's first point, defendant calls this court's attention to Rule 84.04(e) that includes the requirement, "If a point relates to the giving, refusal or modification of an instruction such instruction shall be set forth in full in the argument portion of the brief." Defendant correctly points out, "Plaintiff has failed to set forth this instruction in full under Point I of the argument portion of her brief as required by Rule 84.04(e)." Plaintiff has included a copy of Instruction No. 11, as well as Instruction No. 10, and an offered but refused instruction, Instruction No. A, in an "[a]ddendum" at the end of her brief.

In *McMullin v. Borgers,* 806 S.W.2d 724 (Mo.App.1991), the Eastern District of this court held:

Rule 84.04(e) clearly states that, "[i]f a point relates to the giving, refusal or modification of an instruction such instruction shall be set forth in full *in the argument portion of the brief.*" (Emphasis supplied). Rule 84.04 is to be strictly enforced. *East v. Landmark Central & Trust Company,* 585 S.W.2d 222, 225 (Mo.App.1979). By not placing the instructions in the argument portion of his brief plaintiff has failed to preserve his points on appeal. *McKee v. Wilmarth,* 771 S.W.2d 955, 957 (Mo.App. 1989).

*Id.* at 727–28. In *McMullin,* the appellant had set forth the applicable instruction in an addendum to the brief. The Eastern District opted to review the point "for plain error pursuant to Rule 84.13(c)." *Id.* at 728.

Defendant's complaint that plaintiff did not comply with Rule 84.04(e) is well-taken. As was done in *McMullin,* this court will review Point I only for plain error.

■ Instruction No. 11 states:

You must not assess a percentage of fault to Defendant Jurea Apartments, Inc. if you believe that, at the time plaintiff Anna Ellis fell on said defendant's pathway, there existed throughout the City of Springfield a general condition of ice, and the condition of said defendant's pathway, as submitted in Instruction No. 10 was not a special, isolated condition.

Instruction No. 10 states:

You must assess a percentage of fault to Defendant on Plaintiff's claim for personal injuries if you believe:

First, there was ice on the bridge on the pathway and as a result the pathway was not reasonably safe, and

Second, Defendant knew, or by using ordinary care could have known, of this condition, and

Third, Defendant failed to use ordinary care to make the pathway reasonably safe, and

Fourth, as a direct result of such failure, Plaintiff sustained damage unless you believe Plaintiff is not entitled to recover by reason of Instruction No. 11.

The instruction given as Instruction No. 11 in this case was approved in *Willis v. Springfield Gen. Osteopathic Hospital,* 804 S.W.2d 416, 418 (Mo.App.1991). Plaintiff argues, however, that this defendant, unlike the defendant in *Willis,* "has by contract either expressed or by course of conduct obligated [itself] to perform the duty of snow and ice removal." Plaintiff correctly states:

The general rule [the "Massachusetts rule"] is that there is a duty on a landlord to keep his premises in good repair and safe condition. There is an exception when dangerous conditions are the result of a general condition of fresh fallen snow or ice. But there is an exception to the exception, where by express promise or course of conduct a landlord has created a duty to remove snow and ice.

*See Willis v. Springfield Gen. Osteopathic Hospital, supra,* at 419; *Woodley v. Bush,* 272 S.W.2d 833, 834–35 (Mo.App.1954). Plaintiff then, in an attempt to distinguish this case from *Willis,* relies on the "exception to the exception, where by express promise

or course of conduct a landlord has created a duty to remove snow and ice."

The exception to the Massachusetts rule was explained in *Willis.* *Willis* quoted from *Alexander v. American Lodging, Inc.,* 786 S.W.2d 599 (Mo.App.1990):

An exception to the Massachusetts rule arises where a landlord obligates himself either by agreement or a course of conduct over a period of time to remove snow and ice from common areas, thereby assuming a duty to exercise ordinary care to remove the snow and ice to make the common area reasonably safe.

*Id.* at 601, quoted in *Willis,* 804 S.W.2d at 419.

Plaintiff contends she was told when she signed the lease agreement with defendant that defendant would maintain the common areas. In her brief, she argues she understood that to mean that defendant would mow the grass and shovel ice and snow. Her testimony at trial, however, was:

Q. [by plaintiff's attorney]: Okay. Did you read the lease agreement?

A. No, I couldn't read the fine print on it and I asked her to read it to me. And she said she would just go over the highlights of it with me, like the rent and the deposit, and the pet deposit, and all that, and who took care of what. I was supposed to keep the apartment clean and in good shape. And she said they kept the grounds, they were supposed to keep the grounds, like mowed and cleaned and—

She also testified:

Q. When was that that [sic] lease agreement due to expire?

A. In August of '90.

Q. Did you sign any other agreement after August of '90?

A. No.

Q. Did you stay on at the apartment after August of '90?

A. Yes, I did.

Q. Did you continue to pay your rent every month after August of '90?

A. Yes, I did.

Q. When did you leave the apartment?

A. It was on January 15th of 1991.

There was no showing that defendant was obligated by an express agreement to remove freshly fallen ice or snow. Neither was it shown that defendant assumed a duty to remove ice from the area where plaintiff fell when it caused ice to be removed from an area near the entrance to its manager's office. Any ice that defendant removed amounted to a gratuitous undertaking, one that defendant had no duty to perform. *See Willis,* 804 S.W.2d at 422.

The trial court did not commit plain error in giving Instruction No. 11 or in failing to instruct the jury that defendant had obligated itself to remove ice under the circumstances that existed at the time of plaintiff's fall. Point I is denied.

Plaintiff's second point asserts the trial court erred in failing to add to Instruction No. 11 a "tail" which was part of "Instruction A." Instruction No. A was offered by plaintiff and refused by the trial court. Plaintiff contends Instruction No. A should have been given "for the reason that Plaintiff presented evidence at trial showing Defendant had by course of conduct under taken [sic] a duty to perform snow and ice removal and the trial court should have presented that issue to the jury."

Point II also violates Rule 84.04(e). It relates to a refused instruction, Instruction No. A. Instruction No. A is not set forth in the argument portion of the brief. The point was not preserved for appellate review. *McMullin v. Borgers,* 806 S.W.2d at 727–28. Point II will be reviewed only for plain error.

Instruction No. A states:

You must not assess a percentage of fault to Defendant Jurea Apartments, Inc. if you believe that, at the time plaintiff Anna Ellis fell on said defendant's pathway, there existed throughout the City of Springfield a general condition of ice, and the condition of said defendant's pathway, as submitted in Instruction No. ___ was not a special, isolated condition.

*Unless you believe that defendant Jurea Apartments, Inc. regularly engaged in snow and ice removal from common areas as a matter of company policy, or*

*Unless you believe that Defendant Jurea Apartments, Inc. initiated removal of snow and ice from common areas by clearing the area surrounding the apartment office.* [Emphasis added.]

The italicized part of Instruction No. A is the tail to which plaintiff refers in Point II. The first paragraph of Instruction No. A (with "10" inserted in the blank) is the instruction the trial court gave as Instruction No. 11.

■ Arguably, there was no evidence supporting the postulate in the second paragraph of Instruction No. A that defendant regularly, as a matter of company policy, removed snow and ice from common areas of the apartment complex. Questions were posed to defendant's apartment manager about existing policies relative to snow removal. This court finds no responses from the witness that acknowledged such a policy. Regardless, the existence of a company policy for snow and ice removal does not, standing alone, establish a duty to perform the assumed task. *See Willis,* 804 S.W.2d at 422. The second paragraph of Instruction No. A is erroneous.

■ The third paragraph of Instruction No. A is also erroneous. The fact that on the occasion when plaintiff fell, defendant had removed ice and snow at an entrance area to its manager's office did not establish a duty to remove ice from any other area.

In *Willis, supra,* this court quoted, and followed, *Bell v. Siegel,* 242 Mass. 380, 136 N.E. 109 (1922):

In *Bell v. Siegel,* 242 Mass. 380, 136 N.E. 109 (1922), a tenant who was injured in a fall on icy steps leading into the apartment building where he lived sought to recover from the owner of the building. Even though, in that case, the court determined that the plaintiff and others had talked to the defendant previously about ice on the steps where plaintiff ultimately fell, the court found no liability as to the defendant landowner for the reason that the landowner had no duty to remove ice that naturally accumulated on the steps. The court noted, "There was no evidence that the contract of letting bound the de-

fendant to keep the premises safe for use or that any such contractual relation was thereafter created." 136 N.E. at 109–10. *Willis,* 804 S.W.2d at 422. This court further quoted from *Bell:*

> If a danger existed and continued, it was because of mere inaction. It did not appear that the condition of the ice was caused by any negligence or wrongful act of the defendant. The landlord did not do work gratuitously undertaken in a negligent manner. The danger was not caused by any misrepresentation on his part.

*Id.,* quoting from 136 N.E. at 110.

Plaintiff knew the footbridge that she undertook to cross was ice-covered and slick. The danger of walking across the bridge existed and continued because of inaction in removing the ice. The condition was not caused by negligence or any wrongful act of defendant.

In support of her contention that the trial court erred in refusing Instruction No. A, plaintiff cites *Alexander v. American Lodging, Inc., supra,* and *Maschoff v. Koedding,* 439 S.W.2d 234 (Mo.App.1969).

In *Maschoff* the landlord had not expressly agreed to remove snow and ice. However, the court pointed to the following in concluding that terms of the applicable lease that required the landlord to perform "grounds maintenance" obligated the landlord to remove snow and ice from parts of the apartment complex "used in common."

> [T]here was nothing in the written lease which obligated defendants to remove the snow and ice from the common steps. It is true that the words "snow and ice" do not appear in the lease, but it does not necessarily follow that their absence is fatal. What the defendants did undertake to do, by the terms of the lease, was to "supply * * * grounds maintenance." Dern, defendants' maintenance main [sic], stated that his duties were those of "general maintenance," and when asked what that term included replied: "This means fixing faucets, shoveling snow, painting, whatever we have to come up that would have to be fixed." Asked a similar question, Chandeler, defendants' head maintenance man,

answered that his duties involved "General maintenance, snow removal, everything that would come up." The uncontroverted testimony of both was that for a period of years prior to plaintiff's accident defendants' maintenance men had in fact removed snow on various occasions. The term "grounds maintenance" as used in the lease is by no means clear and unequivocal, and it is a well-established rule that where the contract is ambiguous or there is a reasonable doubt as to its meaning, the construction placed on it by the parties as evidenced by their acts, conduct or declarations indicating a mutual intent and understanding will generally be adopted by the court. *Aetna Casualty & Surety Co. v. Haas,* Mo., 422 S.W.2d 316; *Landau v. Laughren,* Mo., 357 S.W.2d 74; *State ex rel. Northwestern Mut. Life Ins. Co. v. Bland,* en banc, 354 Mo. 391, 189 S.W.2d 542, 161 A.L.R. 423.

439 S.W.2d at 237. The court concluded:

> In view of the foregoing evidence which establishes the construction of the lease placed upon it by defendants, we conclude that by the term "grounds maintenance" defendants had obligated themselves to remove snow and ice from those parts of the premises used in common.

*Id.* In this case, there was no agreement similar to that in *Maschoff.* There was no showing that defendant assumed an obligation to remove ice. *Maschoff* does not assist plaintiff.

In *Alexander* the court said:

> Missouri applies the "common use rule" when determining a landlord's liability for injuries occurring in common areas. *Maschoff v. Koedding,* 439 S.W.2d 234, 235 (Mo.App.1969). This rule imposes a duty upon the landlord to exercise ordinary care to keep common use areas, such as parking lots, sidewalks and steps in a reasonably safe condition for the use intended, and the landlord is liable for personal injuries to tenants occurring as a result of his failure to perform that duty. *Id.* An exception to the common use rule applies when snow and ice naturally falls and accumulates on common areas. When a common area is covered by snow and ice which has natural-

ly fallen and accumulated, no duty to remedy the condition is imposed on the landlord. (The Massachusetts rule.) Missouri applies the Massachusetts rule. *Id.* at 236; *Woodley v. Bush,* 272 S.W.2d 833, 834 (Mo. App.1954). An exception to the Massachusetts rule arises where a landlord obligates himself either by agreement or a course of conduct over a period of time to remove snow and ice from common areas, thereby assuming a duty to exercise ordinary care to remove the snow and ice to make the common area reasonably safe. *Maschoff,* 439 S.W.2d at 236.

786 S.W.2d at 601.

In *Alexander,* the defendant had undertaken to remove snow and ice from the area where the plaintiff fell. The landlord had worked on the ice the day before the fall. "Having assumed the duty to remove the snow and ice, the question was whether American [the defendant] met the standard of care articulated in instruction No. 5 when it undertook snow and ice removal from its parking lot." *Id.* at 602. The standard of care recited in Instruction No. 5 given in *Alexander* was "fail[ure] to use ordinary care to make the parking lot reasonably safe." *Id.* at 600.

*Alexander* addressed circumstances in which a landlord undertakes the task of snow removal but fails to use ordinary care in performing the task. In this case, defendant did not undertake the duty of removing the ice. Point II is denied.

■ Plaintiff's third point is directed to Count III of her petition. Plaintiff sought to recover damages for breach of her rental agreement. She contended that defendant "constructively evicted" her by failing to make certain repairs to her apartment; that she was forced to leave her apartment because of its inhabitability. She sought recovery of a rental deposit, rent for the month of January 1991, and interest.

Point III contends the trial court erred in not allowing a witness, Tammy Loebach, who had previously been a tenant of defendant, to testify that she moved out of the apartment complex because defendant failed to make needed repairs to her apartment. Plaintiff contends she was entitled to elicit Ms. Loebach's testimony because defendant's apartment manager testified that he knew of no one other than plaintiff who moved from defendant's apartments because needed repairs were not timely made. The trial court sustained defendant's objection that Ms. Loebach's testimony was not relevant.

Defendant was permitted to voir dire Ms. Loebach. Ms. Loebach testified that defendant had been slow to make repairs while she resided at its apartment complex. She testified that she had complained about a loose window in her daughter's bedroom; that a girl put her hand on the outside of the loose window one night "and the window came through and sliced [Ms. Loebach's] little girl's arm all the way down to the bone."

Ms. Loebach testified that was why she left the apartment; she thought it was hazardous. Ms. Loebach did not recall the date when she moved from defendant's apartments. She thought she moved from the apartment "either the end of October or the 1st—around the 1st, in that area, of '89." Ms. Loebach also testified that there had been a leak in the plumbing at her apartment that had not been fixed in a timely manner and when it was fixed, "they messed up the dishwasher in the meantime"; that the dishwasher never was fixed.

■ "[T]he admission or exclusion of evidence is within the sound discretion of the trial court." *State ex rel. Hwy. & Tr. Com'n v. Pracht,* 801 S.W.2d 90, 93 (Mo.App.1990). An appellate court will not reverse a case based on a trial court's ruling on an evidentiary question unless there is substantial or glaring injustice. *Id.*

Ms. Loebach moved from her apartment six months before plaintiff moved into defendant's apartment complex. The events about which Ms. Loebach complained were not similar to the ills that defendant contends caused her to move from her apartment. Even if this court determined Ms. Loebach's testimony would have been relevant, which this court need not and does not decide, its exclusion did not produce a substantial or glaring injustice. Point III is denied.

Plaintiff's Point IV contends the trial court erred by refusing to admit certain exhibits into evidence, Plaintiff's Exhibits 17 and 18. The exhibits were written statements from physicians stating that plaintiff had undergone coronary artery bypass surgery prior to her fall; that she had done well until her fall; that the type of injury plaintiff sustained in the fall could separate the sternum.

Plaintiff's Exhibits 17 and 18 go to the issue of damages, i.e., the extent of injuries plaintiff suffered. The jury did not find liability. This court has upheld that finding in its rulings on Points I and II. The jury never reached the issue of damages. It is, therefore, not necessary to address that issue on appeal. Point IV presents nothing for review.

Plaintiff's Point V is directed to a motion in limine the trial court granted prior to trial. Plaintiff contends the trial court erred in granting the motion.

> [A] ruling on a motion in limine is interlocutory and hence its denial cannot constitute reversible error. That is because the subject of the objection may never reach the jury as evidence. *Peters v. Henshaw,* 640 S.W.2d 197, 201 (Mo.App.1982). It is a timely objection at the trial to the proferred [sic] evidence which preserves the matter for review, and not the rejection of a motion in limine. *Honey v. Barnes Hospital,* 708 S.W.2d 686, 694 [7, 8] (Mo.App. 1986).

*Ball v. American Greetings Corp.,* 752 S.W.2d 814, 824 (Mo.App.1988). The evidence affected by the trial court's ruling on the motion in limine was not offered during the course of the trial. Point V is denied. The judgment is affirmed.

SHRUM and MONTGOMERY, JJ., concur.