Robert C. MILLER, Plaintiff/Respondent,

v.

DANNIE GILDER, INC.,
Defendant/Appellant.

No. 71137.

Missouri Court of Appeals,
Eastern District,
Southern Division.

April 14, 1998.

Clark Harwell Cole, St. Louis, for defendant/appellant.

Malcolm Henry Montgomery, Cape Girardeau, for plaintiff/respondent.

CRAHAN, Chief Judge.

Dannie Gilder, Inc. ("DGI") appeals the judgment entered upon a jury verdict in favor of Robert C. Miller ("Agent") on Agent's claim for breach of a contract to pay him commissions on freight hauling business procured for DGI by Agent. We reverse and remand with leave to join Agent's father, C.B. Miller, who is an indispensable party to Agent's claim.

In 1983, Agent and DGI negotiated an oral agreement whereby Agent would assist DGI in obtaining freight hauling business from the Proctor and Gamble ("P & G") plant at Neely's Landing, Missouri in exchange for a percentage of DGI's gross receipts from P & G work to be paid to Agent and his brother as a commission. Agent supplied DGI with the names of P & G officials charged with hiring trucking companies and, after it acquired some P & G business, DGI began paying Agent and his brother a commission of 1 1/2% each on its gross receipts from P & G business. Shortly thereafter, Agent's brother dropped out of the arrangement because he was working for P & G. DGI stopped making payments to Agent's brother

but continued making payments of 1 1/2% to Agent.

After about two years, Agent instructed DGI to make all further commission payments to his father, C.B. Miller. According to Agent, the reason he directed DGI to make the commission payments to his father was because of his divorce. By directing that the payments be made to his father, Agent was seeking to conceal assets from his ex-wife and to lower his taxable income.

As directed by Agent, beginning in 1985, DGI sent all commission checks and monthly worksheets showing the calculations of the commissions to Agent's father, C.B. Miller. As required by the Millers, DGI reported the income to the IRS as income of C.B. Miller and sent 1099 forms to C.B. Miller each year. Agent testified that his father gave him about half of the commissions, in cash, although he was unsure exactly how much his father gave him.

In 1991, DGI unilaterally reduced the commission to one percent. The change was discussed with Agent and with his father. Although neither Agent nor his father agreed with the reduction, C.B. Miller accepted the payments made at the reduced rate.

In 1993, P & G notified DGI that it would reduce the tariff rate it paid DGI for freight hauling by 16%. Mrs. Helderman, the majority shareowner of DGI, informed Agent that, due to the reduction in what P & G paid DGI, it would be necessary to reduce the commission again to ½%. According to Mrs. Helderman, Agent told her he did not have authority to accept this change and that she would have to talk with his father. Mrs. Helderman then called C.B. Miller, who objected to the commission reduction and persuaded her to give him until July to try to persuade P & G to raise its tariff rate. Mrs. Helderman testified that she agreed to continue paying a 1% commission until July and that C.B. Miller agreed if he was unsuccessful in getting the tariffs raised, the payments could cease. Mrs. Helderman ceased making any further payments in December, 1993 and Agent filed suit.

In its first point, DGI contends the trial court erred in failing to join Agent's father, C.B. Miller, because Agent assigned him some or all of his rights under the agreement[1]. We find this point dispositive of the appeal.

Rule 52.04(a) states:

A person shall be joined if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been joined, the court shall order that the person be made a party. If the person should join as a plaintiff, but refuses to do so, the person may be made a defendant.

An assignment is accomplished when there appears from the circumstances an intention on one side to assign at a present time and on the other side to receive. *Barker v. Danner*, 903 S.W.2d 950, 956 (Mo.App. 1995). In the present case, the evidence indicated that Agent had assigned at least a portion of his rights under his commission arrangement with DGI to his father, C.B. Miller.

Agent admitted that he asked DGI to switch his commission payments to his father in 1985. Agent explained that he wanted his commission checks paid to his father in order to keep his wife from making a claim on that income in the course of his divorce. Also, Agent believed he could gain a tax advantage by having his father take "responsibility" for the commission income and, indeed, Agent personally paid no taxes on the commissions from DGI after having his payments switched. C.B. Miller paid all of the taxes on the commissions.

---

1. DGI first raised this issue in its Answer and preserved it in its motion for new trial. There is authority, however, that failure to join a necessary party is an issue that may be raised *sua sponte* on appeal. *Justus v. Webb*, 634 S.W.2d 567, 570 (Mo.App.1982).

■ Pursuant to Agent's request, DGI directly sent his father commission checks payable to C.B. Miller as well as periodic accounting statements. Agent admitted that his father "kept [half] as his money" in exchange for his role in this arrangement. C.B. Miller also negotiated directly with DGI about matters related to commission payments. The foregoing evidence shows, as a matter of law, that Agent assigned at least some of his rights under the commission agreement with DGI to his father.

■ An assignment vests the rights and interests of the assignor in the assignee, including the right to maintain a civil action. *Eston v. Aman,* 847 S.W.2d 902, 905 (Mo.App.1993); *McMullin v. Borgers,* 806 S.W.2d 724, 731 (Mo.App.1991). With respect to those rights, C.B. Miller, not Agent, is the real party in interest. *McMullin,* 806 S.W.2d at 724.

If forced to proceed without C.B. Miller as a party to this lawsuit, DGI would be left subject to a substantial risk of double or otherwise inconsistent obligations. C.B. Miller could attempt to sue DGI for part or all of the commissions due under the agreement as an Agent's assignee. This is precisely the circumstance Rule 52.04 is intended to prevent. Due to Agent's failure to join his father, C.B. Miller, the trial court was without jurisdiction. *Dark v. MRO Mid–Atlantic Corp.,* 876 S.W.2d 714, 717 (Mo.App.1994); *Vanderson v. Vanderson,* 668 S.W.2d 167, 169 (Mo.App.1984). Point granted.

The judgment is reversed and remanded with leave to add C.B. Miller as a party and make necessary amendments to the petition. *See Justus v. Webb,* 634 S.W.2d 567, 570 (Mo.App.1982).

RHODES RUSSELL and JAMES R. DOWD, JJ., concur.