Shirley A. WILLIS and Toby G. Willis, Plaintiffs–Appellants,

v.

SPRINGFIELD GENERAL OSTEO-PATHIC HOSPITAL d/b/a Springfield General Hospital, Defendant–Respondent.

No. 16596.

Missouri Court of Appeals, Southern District, Division Two.

Feb. 20, 1991.

Richard H. Stevens, Stevens & Nolan, and William C. Prince, Springfield, for plaintiffs-appellants.

Kent O. Hyde, William C. Love, Harrison, Tucker & Hyde, Springfield, for defendant-respondent.

PARRISH, Presiding Judge.

Plaintiffs Shirley A. Willis and Toby G. Willis assert separate claims by this action. Shirley seeks recovery for personal injuries she sustained in a fall on defendant's ice-covered parking lot (Count I). Toby (Shirley's husband) seeks recovery for loss of consortium occasioned by reason of Shirley's fall (Count II). Plaintiffs allege that Shirley's fall and resulting injuries occurred because defendant was negligent by failing to remove ice from its parking lot, failing to barricade the area on the parking lot that was slick due to icy conditions, or failing to apply an appropriate substance to the surface of the parking lot to improve traction. A jury returned verdicts assessing no fault to defendant. Judgment was entered in favor of defendant in accordance with the verdicts. Plaintiffs appeal. This court affirms.

Plaintiff Shirley Willis spent the evening of January 22, 1984, and the early morning of January 23, 1984, at Springfield General Hospital, a facility operated by defendant. Shirley went there to visit her grandfather who was a patient at that hospital. She went to the hospital knowing that it might be necessary that she spend the night. Her grandfather was difficult to control. Shirley testified, "He was belligerent, and they couldn't do anything with him, he was hard to control, out of his head, so forth." She spent most of the evening in a waiting area near an intensive care unit where her grandfather was a patient. During the early morning on January 23, Shirley went into the intensive care area to assist with the care of her grandfather. Someone from the nursing staff suggested that her presence might be of assistance in maintaining control over her grandfather.

At the time Shirley arrived at the hospital on the afternoon of January 22, no precipitation had fallen. There was no snow or ice on the ground. She described the weather at that time as "[j]ust a cold winter day." Throughout the evening of January 22 and during the early morning hours of January 23, there was freezing rain. Shirley knew it was slick outside. She had overheard some of the nursing staff and other personnel talking about the slick conditions.

Sometime between 7:15 and 8:00 a.m. the morning of January 23, Shirley left the intensive care unit to go home. It was light outside by the time she left the hospital. Shirley left the hospital building and proceeded across the parking lot to her car. Her car was "45, 50, steps" away from the building. Knowing that the parking lot was slick, she crossed the lot "[g]ingerly, very carefully." She approached her car, unlocked the door, reached into the car and got her ice scraper. Shirley then went to the back window of the car to scrape ice from it. She gave the following account of her actions:

Q. Did you begin scraping it or—

A. I can't recall, I think I had just started to scrape it, sir.

Q. You just started to scrape it and what?

A. And I fell, my feet slipped out from under me.

Q. Both your feet slipped out from under you?

A. I think so.

Q. Was there anybody else standing near you?

A. No, sir.

Q. Was there any other object that was in your way?

A. No, sir.

Q. Had you reached up to scrape yet?

A. I think I was just getting ready to, sir.

Q. Your feet went out from under you?

A. Yes, sir.

Q. And you fell, on what part of your body did you fall?

A. My buttocks.

Q. Did you get your hands down or any other part of your body down?

A. I can't remember, I think I just hit my buttocks.

After she fell, Shirley felt pain in her lower back. She then got into her car and went home. She arrived home about 9:00 or 9:15 a.m. She took a bath and went to bed. She continued experiencing pain but fell asleep. She awoke about 1:30 or 2:00 p.m. On the next day, January 24, Shirley went to work but had to return home because of her discomfort. On the following day, January 25, Shirley went to a doctor. She was given medication. On February 17 she was hospitalized. It was determined that Shirley was suffering from a ruptured fourth lumbar disk. On February 23 a chemonucleolysis procedure was performed. She was later released. Shirley was again hospitalized in April 1984 for a period of 10 or 12 days during which the injured disk was surgically removed by means of a laminectomy. Shirley was hospitalized a third time in August 1985. Three caudal blocks were performed in an attempt to relieve pain.

Plaintiffs present two points on appeal. Both points assert trial court error in the giving of certain instructions to the jury.

Plaintiffs' first point is directed to jury instructions Nos. 10 and 15. Instruction No. 10 was part of the jury instructions given with respect to Shirley's claim for personal injuries. Instruction No. 15 was part of the jury instructions given with respect to Toby's claim for loss of consortium. Both instructions are identical other than their respective numbers and the references in each instruction to the verdict director applicable to the appropriate plaintiff's claim. For brevity, only Instruction No. 10 is set out below.

Instruction No. 10 states:

> You must not assess a percentage of fault to defendant Springfield General Hospital if you believe that, at the time plaintiff Shirley Willis fell on said defendant's parking lot, there existed throughout the City of Springfield a general condition of ice, and the condition of said defendant's parking lot, as submitted in Instruction No. 8, was not a special, isolated condition.

The copies of the jury instructions included in the legal file have no MAI notations nor designations of what party submitted the instructions.[1] Appellants state in their brief, however, that Instructions Nos. 10 and 15 are "essentially modified MAI 33.01, 33.05 and 37.04."

Instruction No. 8, to which Instruction No. 10 refers, states:

> In your verdict you must assess a percentage of fault to defendant if you believe:

First, there was ice on the parking lot of defendant and as a result the parking lot was not reasonably safe for customers, and

Second, defendant knew or by using ordinary care could have known of this condition, and

Third, defendant failed to use ordinary care to remedy it, and

Fourth, as a direct result of such failure, Plaintiff Shirley A. Willis was injured.

Instruction No. 13, to which Instruction No. 15 refers, is the same as Instruction No. 8 other than the words, "Plaintiff Toby G. Willis' wife was injured and Plaintiff Toby G. Willis thereby sustained damage," are substituted for those words appearing in the last line of Instruction No. 8 as it is quoted above.

Plaintiffs contend that Instruction No. 10 and Instruction No. 15 misstate the law because those instructions assert that defendant was not subject to liability if the icy condition on its parking lot was a result of a general condition within the geographic area. Plaintiffs claim that Instructions Nos. 10 and 15 permitted the jury to wrongfully conclude that defendant had no duty, under the facts of this case, in the exercise of ordinary care, to clear the parking lot. They contend that defendant had a snow removal policy and, therefore, had a duty to clear or otherwise make the parking lot safe to walk upon, and that Instructions Nos. 10 and 15 did not permit the jury to so find.

---

1. Rule 70.02(d) provides, in part:

   **Marking—Use of and Filing.** Each instruction shall be submitted with an original and one copy for the court and one copy for each party. Each copy shall indicate whether it was prepared at the court's direction or by which party it was tendered and shall contain a notation as follows:

   "MAI No. ____" or "MAI No. ____ modified" or "Not in MAI"

   as the case may be.... All instructions refused and all instructions given, including a record of who tendered them and the "MAI" notation, shall be kept as a part of the record in the case.

   Although neither Rule 70.02 nor Rule 81.12, the rule that specifies what should be included in a record on appeal, directs that copies of jury instructions included in legal files should be made from those copies submitted to the court that have the required "MAI" notation on them, such a practice would be helpful in the process of appellate review.

   Prior to the revision of Rules 81.12 and 81.14 in 1980, a record on appeal did not include a "legal file." The record on appeal consisted only of a transcript. The transcript included jury instructions as well as other portions of the trial record that were previously reduced to written form. The experienced court reporters who prepared the transcripts on appeal were accustomed to including the MAI notation on the typewritten copies of jury instructions that were included in the transcript. A similar practice should be followed by attorneys who now prepare legal files that include copies of jury instructions.

Plaintiffs concede that the general rule of law is that an invitor has no duty to remove snow or ice on outside areas where the snow or ice accumulated naturally as a result of general weather conditions within the community. That rule was first applied in *Woodley v. Bush,* 272 S.W.2d 833, 834–35 (Mo.App.1954).[2] *Woodley* was a case in which a tenant in an apartment building sued the owner of the building for personal injuries she sustained from a fall on icy grounds adjacent to the building. The area where the tenant fell was owned by the owner of the building and used by tenants to exit from the building. The tenant was denied recovery. The rule that there is no duty required to remove snow or ice that accumulates naturally and is a condition general to the community is the same for landlords, municipal corporations, invitors and employers. *Alexander v. American Lodging, Inc.,* 786 S.W.2d 599, 601 (Mo.App.1990). In adopting the rule, the court, in *Woodley,* concluded:

This appears to be reasonable for where the condition is one general to the community it creates a natural hazard to everyone who ventures out at such time. The condition is brought about by no one and no one's efforts can appreciably lessen the danger present. As applied to the state of facts before us, the alley through which the plaintiff walked was just as icy as the premises upon which she lived, so that when she was on her way to and from work she was at all times subject to the danger of slipping. Had there been a clear walk to the alley it would have afforded her sure footing but for a very few feet and left her confronted with an icy road for the rest of her way. Thus any effort of the landlord would in fact only diminish the natural hazard to a very negligible degree.

The logic of the majority of the cases is consequently impelling and the land-

lord should not be held liable to a tenant for injuries caused by a natural accumulation of ice and snow general to the community.

*Woodley v. Bush, supra,* at 835.

Plaintiffs assert, however, that the facts upon which they base their claims fall within an exception to this general rule (the general rule is known as the "Massachusetts rule"). That exception is explained in *Alexander v. American Lodging, supra,* as follows:

An exception to the Massachusetts rule arises where a landlord obligates himself either by agreement or a course of conduct over a period of time to remove snow and ice from common areas, thereby assuming a duty to exercise ordinary care to remove the snow and ice to make the common area reasonably safe.

Plaintiffs point to the testimony of one of defendant's employees, Ruth Cossairt, and contend that the facts of this case fall within that exception.

Ruth Cossairt was defendant's "risk manager." In response to questions asked by plaintiffs' attorney, Ms. Cossairt stated that defendant's policy was to clean snow off the parking lot if there was a one-inch snowfall and, for ice, to use ice pellets, or sand, or salt. She identified an exhibit presented by defendant's attorney as "the snow and ice removal policy for the hospital." Although that exhibit was not offered in evidence, Ms. Cossairt was asked the question, "Now, does this as part of a policy state that when snow, or sleet, or freezing first starts, begin to clear walks, steps, ER entrance, and all areas designated walkways, apply liquid ice melt or ice pellets to keep these areas clear, and continue to use ice melt pellets and sand until ice and snow are gone from lots and walkways?" She answered, without objection, "Yes, that's what it says."[3] Plaintiffs as-

---

2. *Woodley, supra,* at 835, cites two prior Missouri cases, *Henry v. First National Bank,* 232 Mo.App. 1071, 115 S.W.2d 121, 127 (1938), and *Morelock v. DeGraw,* 234 Mo.App. 303, 112 S.W.2d 126 (1937), "which by way of dictum recognize and give sanction to the rule stating that the landlord 'is not ordinarily liable for

obstructions arising from natural causes or from the acts of other persons * * *.'"

3. Plaintiffs' legal file includes a one-page writing entitled "SNOW REMOVAL." That writing is on paper that has the words "SPRINGFIELD GENERAL HOSPITAL, AN OSTEOPATHIC IN-

sert that defendant, by its ice removal policy, obligated itself to remove ice from its parking lot and thereby had a duty to do so. They argue that Instructions Nos. 10 and 15 did not permit the jury to consider whether defendant had "obligated" itself to remove the snow and ice by reason of its snow removal policy, as testified to by Mrs. Cossairt. In support of this position, plaintiffs point to *Alexander v. American Lodging, Inc., supra,* in which the court held the giving of an instruction "virtually identical to Instructions 10 and 15 given in the instant case" was error.

Defendant argues that *Alexander* does not apply. The defendant in *Alexander* had previously cleared snow and ice from its parking lot and had spread salt and gravel on the parking lot. Later, the plaintiff in *Alexander* had fallen. Defendant says that the actions taken on the parking lot in *Alexander* resulted in there being a condition at the location where the fall occurred that was other than the condition that resulted from a natural accumulation of ice; that the natural condition on the parking lot in *Alexander* was changed by the work that was done on the parking lot after the snow and ice had fallen but before the plaintiff fell. Defendant suggests that once American Lodging, Inc. attempted to remove snow, it changed the condition of the lot from the general condition of the area caused by the ice accumulation to an isolated condition produced by the actions of American Lodging.

Defendant contends that *Carden v. Lester E. Cox Medical Center,* 519 S.W.2d 338 (Mo.App.1975), and *Turcol v. Shoney's Enterprises, Inc.,* 640 S.W.2d 503 (Mo.App. 1982), apply to this case rather than *Alexander v. American Lodging, Inc.* In *Carden* and *Turcol* the evidence was that no action had been taken to remove natural accumulations of ice and snow. However, in both those cases there was evidence that

conditions in the parking lots where the respective plaintiffs had fallen had considerably worsened from what those conditions had been immediately after the snow and ice had accumulated. Instructions similar to Instructions Nos. 10 and 15 were given in *Carden* and *Turcol.* In those cases, verdicts were entered for the respective plaintiffs. There was evidence in both cases that there were changed conditions of the parking lots between the times of the natural accumulations of snow and ice and the times each of the respective plaintiffs fell on the parking lots. In both *Carden* and *Turcol* the courts held that the evidence supported findings that the conditions on the parking lots were special, isolated conditions, and that the respective defendants had the duty to alleviate those dangerous conditions. The snow and ice that existed at the times of the injuries was not in the condition in which it first had accumulated naturally as a result of conditions general to the communities. Rather, the conditions on the respective lots were isolated with respect to conditions general to the communities.

In *Carden* an invitee fell on snow and ice on a parking lot of the Lester E. Cox Medical Center. Snow had fallen over a period of several days prior to that plaintiff's fall. There was evidence that the parking lot had an ice accumulation that was "solid, rough, ridged and uneven," that had been "caused by automobiles driving, slipping and spinning upon the snow on the lot." The jury was instructed that their "verdict must be for defendant Lester E. Cox Medical Center" if they believed that, at the time of the fall, "there existed throughout the City of Springfield a general condition of snow and ice, and the condition of said defendant's ... parking lot ... was not a special, isolated condition." *Carden, supra,* at 342. The court, in *Carden,*

STITUTION" printed at its top. In their brief, plaintiffs quote from that writing. Notwithstanding the fact that plaintiffs included the sheet of paper in the legal file, it is not properly before this court for appellate review and is not considered on appeal in that it was never offered nor received in evidence at trial. It never became a part of the trial record and, therefore, is not properly a part of the record on appeal. *See State v. Matthews,* 512 S.W.2d 248 (Mo.App. 1974). The legal file consists of "clearly reproduced exact copies of the pleadings and other portions *of the trial record* previously reduced to written form." Rule 81.12(a) (emphasis added).

concluded that "[t]he jury was thus thoroughly instructed as to all factual issues necessary to support the verdict." *Id.* The court further concluded that "[t]he jury by its verdict found that a general condition of snow and ice did not exist in the City of Springfield." *Id.* at 340.

In *Turcol v. Shoney's Enterprises, Inc., supra,* a plaintiff, accompanied by two young daughters, went to the defendant's restaurant. The plaintiff drove into defendant's parking lot, parked the car, alighted from it and proceeded to walk across the lot with her daughters to the restaurant. There was "packed down snow on most of the parking lot." The snow had tire tracks, ruts and ridges. It was described by one witness as "a matted, rough, rugged condition," "... it was settled snow—not snow-covered in a white, fluffy snow, but it was snow-packed where vehicles had gone over the area and the snow had been compacted and there were ridges and ruts." *Id.* at 505.

In *Turcol* plaintiff's fall occurred on January 16. Evidence at trial disclosed that the accumulation of snow and ice on the ground for the prior week varied from seven inches to ten inches. On January 16, there was nine inches of snow on the ground. The defendant in *Turcol* had caused the parking lot to be plowed or salted (sometimes both) on January 10 (plowed), January 11 (salted), and January 15 (plowed and salted). Defendant, in its appeal of a verdict for plaintiff, contended that it had no duty to remove the ice and snow because it was the result of a general condition of ice and snow in the entire area; that it was not a special or isolated condition. Citing *Carden v. Lester E. Cox Medical Center, supra,* the court held that "[w]hether the snow and ice condition was a general condition or an isolated one was a fact question and properly submitted to the jury by appellant's instruction." *Turcol, supra,* at 508.

From *Carden* and *Turcol* it is gleaned that whether an accumulation of ice and snow is the product of a general condition in a geographical area or whether it is an isolated condition unique to a particular parcel of real estate is, under appropriate facts, an issue to be decided by a jury based upon proper instructions by the court. On that basis, disregarding the snow removal policy of the defendant in this case, Instructions Nos. 10 and 15 properly submitted the issue of whether snow and ice on this defendant's parking lot, at the time of the accident, was a general condition within the area where the hospital is located or an isolated condition. *Carden* and *Turcol* do not address the effect, if any, of defendant's snow removal policy. Notwithstanding plaintiffs' contrary argument, neither does *Alexander v. American Lodging, Inc. Alexander* involved facts in which a property owner had undertaken the task of clearing snow from its parking lot by removing snow and by spreading salt and gravel. Snow was removed both the day before the plaintiff in *Alexander* fell and was injured and the day after. Salt and gravel were spread "shortly before Ms. Alexander fell." *Alexander v. American Lodging, Inc., supra,* at 602. Based upon those actions the court concluded in *Alexander,* "The evidence did not support a claim that the parking lot presented a condition of snow and ice general to the area." *Id.* Or, stated otherwise, the instruction given was not supported by the evidence.[4] *See Feld v. Frankel,* 351 S.W.2d 755, 759 (Mo.1961).

Unlike *Alexander,* in this case defendant did nothing to the parking lot between the time the ice accumulated and the time plaintiff Shirley Willis fell. *Alexander* is of no help to plaintiffs in this case other than it was in *Alexander* that the exception to the Massachusetts rule was announced, i.e., that a landlord (or in this case, an invitor generally) may become obligated

---

**4.** In *Alexander* the court noted the similarity between its facts and the facts in *Turcol,* although it disapproved the type of instruction that was used in *Turcol.* The court distinguished its holding with respect to the instruction saying "the evidence [in *Turcol*] was conflicting about whether some additional snow had fallen and whether the condition on the lot when the plaintiff [in *Turcol*] fell was common to the geographical area." *Alexander v. American Lodging, Inc., supra,* at 601.

"either by agreement or a course of conduct over a period of time to remove snow and ice from common areas, thereby assuming a duty to exercise ordinary care to remove the snow and ice to make the common area reasonably safe." *Alexander v. American Lodging, Inc., supra,* at 601. Plaintiffs urge that defendant, by having a snow and ice removal policy, "obligated" itself to remove natural accumulations of snow and ice from its premises and, therefore, owed a duty to plaintiff Shirley Willis to have done so. From this postulate, they argue that since Instructions Nos. 10 and 15 did not address the exception to the general rule—that defendant had a duty to remove snow and ice from the parking lot because it had obligated itself to do so by reason of an agreement or course of conduct—those instructions are misstatements of law.

The question posed is whether an invitor's stated policy to remove naturally accumulated snow and ice common to an area, standing alone, constitutes a duty to do so that extends to invitees. This court does not so find.

Defendant, by having a policy to remove snow and ice, gratuitously undertook a task that it was not duty bound to perform. *Alexander v. American Lodging, Inc., supra; Woodley v. Bush, supra.* Plaintiff Shirley Willis had no knowledge that defendant would or would not remove recently fallen ice or snow. She was unaware of defendant's policy. She could not have relied upon it. *Compare Schwab v. Allou Corp.,* 177 Neb. 342, 128 N.W.2d 835, 839–40 (1964). She had no contacts nor dealings with defendant whereby defendant could be found to have contracted, expressly or impliedly, with her to remove ice and snow from its parking lot. *See Maschoff v. Koedding,* 439 S.W.2d 234 (Mo.App.1969).

In *Bell v. Siegel,* 242 Mass. 380, 136 N.E. 109 (1922), a tenant who was injured in a fall on icy steps leading into the apartment building where he lived sought to recover from the owner of the building. Even though, in that case, the court determined that the plaintiff and others had talked to the defendant previously about ice on the steps where plaintiff ultimately fell, the court found no liability as to the defendant landowner for the reason that the landowner had no duty to remove ice that naturally accumulated on the steps. The court noted, "There was no evidence that the contract of letting bound the defendant to keep the premises safe for use or that any such contractual relation was thereafter created." 136 N.E. at 109–10. The Massachusetts court noted:

If a danger existed and continued, it was because of mere inaction. It did not appear that the condition of the ice was caused by any negligence or wrongful act of the defendant. The landlord did not do work gratuitously undertaken in a negligent manner. The danger was not caused by any misrepresentation on his part.

*Id.* at 110. Then, alluding to the fact in that case that defendant had been told of the icy steps prior to the injury and had told at least one witness, not the plaintiff in the case, that he (defendant) "[would] take care of it," the court added:

There was no liability unless the defendant's failure to keep a gratuitous promise to clean and take care of the steps, and unless his removal of the ice from the steps some few times before the accident and before and after the conversations referred to, created a duty to remove the snow and ice upon which the plaintiff fell.

*Id.* The court concluded that the defendant had no contractual duty to remove the snow and ice and, under Massachusetts law, even if it were assumed that the defendant had undertaken the duty to remove ice by his past actions and his statement that he "[would] take care of it," any obligation to do so was gratuitous. Per Massachusetts law at the time *Bell* was decided, that defendant would be liable only if his failure to remove the dangerous condition constituted gross negligence. The court found that it did not and affirmed the trial court's entry of a directed verdict for the defendant.

Notwithstanding that Missouri does not impose a gross negligence standard for

gratuitous acts,[5] the rationale in *Bell* is apropos to this case. Here, the icy condition on the parking lot where plaintiff Shirley Willis fell was not a hidden defect—she had heard the icy conditions discussed before she left the hospital building and she had proceeded "[g]ingerly" across the parking lot to her car. Those conditions were not the result of any positive act by defendant. The time that passed between when the precipitation fell and Shirley's injuries was relatively short; not a matter of days as were the facts in *Bell*.

This court concludes that any snow and ice removal policy of defendant, whether or not it was followed on the morning plaintiff Shirley Willis fell, was established gratuitously by defendant. The facts of this case do not constitute an exception to the general rule that defendant owed no duty to Shirley, as defendant's invitee, to remove ice and snow that had accumulated by reason of a general weather condition throughout the area. Whether the accumulation of ice was the product of a general condition in the area or whether it was an isolated condition unique to the parking lot where Shirley fell was a fact issue for submission to the jury. *Turcol v. Shoney's Enterprises, Inc., supra,* at 508. That fact issue was properly submitted by Instructions Nos. 10 and 15. Those instructions did not misstate applicable law. Plaintiffs' first point on appeal is denied.

For their second point on appeal, plaintiffs contend that the trial court erred in giving Instructions Nos. 11 and 16. Plaintiffs argue that there was not sufficient evidence that plaintiff Shirley Willis failed to keep a careful lookout or that any of her actions were a proximate cause of her injuries.

Instruction No. 11 states:

In your verdict you must assess a percentage of fault to plaintiff Shirley Willis whether or not defendant was partly at fault if you believe:

First, plaintiff Shirley Willis knew or by using ordinary care should have known that there was ice on the parking lot of defendant Springfield General Hospital's premises and as a result the parking lot was not reasonably safe, and

Second, plaintiff Shirley Willis failed to use ordinary care to keep a careful lookout, and

Third, such failure directly caused or directly contributed to cause any damage plaintiff may have sustained.

Instruction No. 16 is identical to Instruction No. 11. Instruction No. 11 applies to plaintiff Shirley Willis' claim for personal injuries. Instruction No. 16 applies to the loss of consortium claim brought by plaintiff Toby Willis.

Defendant, by its brief, points to *Patton v. May Dept. Stores Co.,* 762 S.W.2d 38 (Mo. banc 1988), as authority on how to instruct a jury in comparative fault cases in which a plaintiff-invitee seeks recovery for damages resulting from injuries caused by unsafe conditions on a defendant's premises. In that case the plaintiff sought recovery for injuries she sustained in a fall over a box that had been located on the floor of the defendant's retail store. In addressing what was necessary in order for a plaintiff to recover in such cases, the Supreme Court stated:

May's first contention is based on the assumption that the substantive law controlling business invitee cases requires the plaintiff to prove she was without knowledge of the condition. Paragraph 2 of MAI 22.03 states:

Second, plaintiff did not know and by using ordinary care could not have known of this condition, and....

In *Cox v. J.C. Penney,* 741 S.W.2d 28 (Mo. banc 1987), this Court held the plaintiff no longer bears the burden to prove she was without knowledge of the dangerous condition. *Cox* held that Para-

**5.** "Our Missouri courts, generally, do not distinguish between negligence and gross negligence, as such, since they do not recognize *degrees* of

negligence." *Warner v. Southwestern Bell Telephone Co.,* 428 S.W.2d 596, 603 (Mo.1968).

**424**

graph 2 of MAI 22.03 should no longer be submitted in the verdict directing instruction, and that plaintiff's knowledge should be submitted by defendant under the principle of comparative fault.

*Id.* at 39–40.

Instructions Nos. 11 and 16 meet the requirements outlined in *Patton.* Nevertheless, as plaintiffs assert in their brief, "if an instruction is unsupported by the evidence, fails to hypothesize relevant facts, and may have been confusing and misleading, the giving of such instruction will justify the granting of a new trial. *Take v. Orth,* 395 S.W.2d 270 (Mo.App. 1965) at 275." See also the discussion regarding jury instructions in *Bayne v. Jenkins,* 593 S.W.2d 519, 530 (Mo. banc 1980). The question presented by plaintiffs' second point on appeal is whether the evidence and reasonable inferences that may be derived therefrom support the facts hypothesized in Instructions Nos. 11 and 16.

Plaintiff Shirley Willis heard hospital personnel discuss the icy conditions prior to leaving the hospital to go to her car. She saw precipitation falling outside before she left the hospital. When she left the building to go to her car, she walked "[g]ingerly" due to the icy condition. Shirley Willis knew there was ice on the parking lot and appreciated the danger that it represented. Nevertheless, after crossing the lot safely and arriving at her car, Shirley unlocked her car door and went around to scrape ice off the back window. She did not recall whether she began scraping. She thinks she was getting ready to scrape ice from the window when her feet went out from under her and she fell. A jury might infer that Shirley failed to use ordinary care in choosing the spot where she was standing, preparing to scrape ice off her car's rear window. A jury might infer that by not observing the condition of the ground where she stood, Shirley failed to use ordinary care to keep a careful lookout. The trial court did not err in giving Instructions Nos. 11 and 16 to the jury. Plaintiffs' second point is denied.

The judgment of the trial court is affirmed.

FLANIGAN, C.J., and HOGAN, J., concur.