

# Missouri Court of Appeals
## Southern District
### Division Two

AMANDA MEDLOCK and )
SAM MEDLOCK, )
)
    Plaintiffs-Appellants, )
)
vs. )    No. SD32776
)
ST. JOHN'S HEALTH SYSTEM, INC., )    Filed April 4, 2014
and ST. JOHN'S CLINIC, INC., )
)
    Defendants-Respondents. )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Daniel W. Imhof, Associate Circuit Judge

AFFIRMED

Amanda Medlock and Sam Medlock, her husband (collectively "the Medlocks"),

appeal the trial court's grant of summary judgment against them and in favor of St.

John's Health System, Inc., and St. John's Clinic, Inc. (collectively "St. John's"), on their

petition alleging premises liability and loss of consortium. The Medlocks' petition stems

from an incident that occurred when Amanda[1] slipped and fell on an "icy sidewalk"

outside the Smith-Glynn Callaway Clinic ("Smith-Glynn") in Springfield, Missouri, a

---

[1] The use of Amanda Medlock's first name in this opinion is for clarity of reference and is not intended to indicate any disrespect or familiarity.

facility owned and operated by St. John's.  Finding that summary judgment was appropriate, we affirm.

**Uncontroverted Facts and Procedural Background**

On January 26, 2009, Amanda, accompanied by Heather Pickett, took Amanda's daughter to Smith-Glynn for a pediatrician appointment.  During their drive from the Fordland, Missouri, area to Smith-Glynn, Amanda observed that freezing rain started to fall as they entered Springfield and continued to fall upon their arrival at Smith-Glynn at around 3:00 p.m.  At that time, ice had accumulated on the cars in the parking lot; however, ice had not yet formed on the parking lot itself or the sidewalk leading to the entrance of Smith-Glynn, which instead was merely wet.

Amanda entered Smith-Glynn without incident, and the scheduled appointment lasted between an hour and an hour and fifteen minutes.  Freezing rain was falling outside Smith-Glynn following the appointment, as Amanda and Pickett exited the building.  Pickett noticed ice accumulating on the sidewalk.  St. John's had a policy addressing ice and snow removal[2]; however, according to Pickett's observations, no salt or anything else had been applied to the ice at that time.  While traversing the sidewalk, Pickett warned Amanda, who had not observed the condition of the sidewalk, that there was ice and that it was slick.  At about the time of Pickett's warning, Amanda slipped and fell on the ice.

The Medlocks filed suit against St. John's, alleging that St. John's "failed to use ordinary care in making the property reasonably safe[.]"  Specifically, the Medlocks

---

[2] This policy provided:
> All sidewalks, outside stairs, driveways and parking facilities are cleared with snow removing equipment whenever snow and ice are present, or as instructed by the Director of Maintenance and Engineering.  During winter months as weather dictates, areas are inspected for ice, snow, and slippery spots.  Whenever areas are found they are immediately treated with salt, chemical ice melts, nitrogen, or sand.  The primary goal for facility upkeep is patient, visitor and employee safety with additional functions including convenience and facility appearance.

2

alleged that St. John's failed to (1) properly remedy the icy sidewalk, (2) warn of the icy sidewalk, and/or (3) barricade the icy sidewalk. By way of its answer, St. John's affirmatively alleged that it "owe[d] no duty to remove, warn, or barricade against any accumulation of ice on which [Amanda] alleges she fell because such ice was a natural accumulation as a result of the general weather conditions in the community."

St. John's filed a motion seeking summary judgment. In its suggestions in support, St. John's argued that the undisputed facts showed that the alleged icy sidewalk was solely the result of a natural accumulation of ice. Under *Richey v. DP Properties*, 252 S.W.3d 249, 251–52 (Mo.App. 2008), and *Milford v. May Department Stores Co.*, 761 S.W.2d 231, 232 (Mo.App. 1988), St. John's contended that it had no duty to remediate against a natural accumulation of ice.

The trial court granted St. John's motion for summary judgment and entered judgment accordingly. The Medlocks now timely appeal.

### Applicable Principles of Review and Governing Law

For summary judgment to be appropriate, the moving party—St. John's in this case—must have demonstrated that there is no dispute as to the material facts and that it was entitled to judgment as a matter of law. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). More specifically, "[a] 'Defending Party,' as that term is used in Rule 74.04(b), may establish a right to summary judgment by showing 'that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly pleaded affirmative defense.'" *Buchheit, Inc. v. Tiller-Cohen Farm, L.P.*, 391 S.W.3d 888, 890 (Mo.App. 2013) (quoting *ITT Commercial Fin. Corp.*, 854 S.W.2d 371 at 381).

As relevant here, "[t]he premises liability theory of negligence provides that a landowner owes an invitee the duty to use reasonable and ordinary care to prevent injury to the invitee as the result of a dangerous condition existing on the premises." ***Cossey v. Air Sys. Int'l, Inc.***, 273 S.W.3d 588, 590 (Mo.App. 2009). However, Missouri recognizes an exception to this general duty of care, which is informally known as the "Massachusetts rule." ***Willis v. Springfield Gen. Osteopathic Hosp.***, 804 S.W.2d 416, 419 (Mo.App. 1991). Under this exception, "an invitor has no duty to remove snow or ice on outside areas where the snow or ice accumulated naturally as a result of general weather conditions within the community." ***Id.*** A duty to exercise ordinary care does exist, however, where one is obligated to remove snow and ice either by agreement or a course of conduct over a period of time. ***Id.***

## Discussion

At the outset, we note that counsel for the Medlocks quite commendably acknowledged during oral argument that the record in this case does not compel reversal of the trial court's grant of summary judgment, unless we abrogate the Massachusetts rule. We agree.

Under the ***Milford*** case, cited by and relied upon by St. John's, "a property owner does not have a duty to remove, from its open-air parking lot, freezing rain, sleet, or snow, as it is falling[.]" ***Milford***, 761 S.W.2d at 231 (affirming judgment notwithstanding the verdict in favor of defendant in "slip and fall" case). Here, the uncontroverted facts reveal that freezing rain was falling upon Amanda's arrival at Smith-Glynn. Ice had not yet formed on the sidewalk in question at that time. Between an hour to an hour and fifteen minutes later, freezing rain continued to fall, and, as she left the building, Pickett observed ice on the sidewalk where Amanda ultimately slipped

4

and fell.  The record contains no evidence that this ice was caused by anything other than the ongoing freezing rain or that it was altered in any way from its natural state.[3]  As stated by the *Milford* court:

> To hold that a duty exists to make a parking lot safe as precipitation falls from the sky would be to create a duty which would be virtually impossible to perform.  A duty cannot impose an "obligation which is not within the actor's ability to perform, since it relates to the actor's conduct over which as such he had control."

*Milford*, 761 S.W.2d at 232 (quoting RESTATEMENT (SECOND) OF TORTS § 4, comment a (1965)).

*Milford* supports the conclusion that St. John's had no duty to make the icy sidewalk upon which Amanda slipped and fell safe under circumstances where the ice had formed as a result of freezing rain that had not yet abated. [4]  *See id.* at 232.  Further, the Medlocks concede that under *Richey*, 252 S.W.3d at 252, St. John's was not obligated to remove the ice by virtue of its snow and ice removal policy alone.[5]

---

[3] St. John's alleged in its statement of uncontroverted facts that there were no indentations, footprints, or changes of any kind to ice upon which Amanda ultimately slipped and cited Pickett's deposition testimony in support.  In their response, the Medlocks denied St. John's allegation, alleging that "[Pickett] was walking in front of [Amanda] on the sidewalk where [Amanda] fell, so the ice contained at least the changes cause by [Pickett's] footprints."  In support of this allegation, the Medlocks cited the deposition testimony of Amanda and Pickett, wherein both testified in some fashion that Pickett was walking ahead of Amanda immediately prior to her fall.  As conceded by counsel for the Medlocks however, this testimony offers no support to the proposition that Pickett changed the natural characteristics of the ice by walking on it and that Amanda slipped on the exact location allegedly altered by the footsteps of Pickett.  S*ee generally Loyd v. Levin*, 413 S.W.2d 540, 543-44 (Mo.App. 1967) (discussing pleading and proof requirements in order for footprints to give rise to a duty to remove snow).  Therefore, the Medlocks have raised no *genuine* factual dispute with the aforementioned allegation.  *See ITT Commercial Fin. Corp.*, 854 S.W.2d at 378 ("'Genuine' implies that the issue, or dispute, must be a real and substantial one—one consisting not merely of conjecture, theory and possibilities.").

[4] We see no meaningful factual distinction between *Milford* and the instant case regarding the fact that the "slip and fall" in *Milford* occurred on an open-air parking lot rather than, as with the instant case, an open-air sidewalk.

[5] The existence of a snow removal policy alone does not create a duty to remove snow or ice.  *Richey*, 252 S.W.3d at 252 (citing *Gorman v. Wal-Mart Stores, Inc.*, 19 S.W.3d 725, 732 (Mo.App. 2000)).  Unlike the situation in *Maschoff v. Koedding*, 439 S.W.2d 234 (Mo.App. 1969), mentioned by the Medlocks in their reply brief, Amanda had no contacts with St. John's whereby St. John's could be found to have contracted to remove ice or snow from the Smith-Glynn premises.  *Compare Maschoff*, 439 S.W.2d at 237, *with Willis*, 804 S.W.2d at 422.  Further, the summary judgment record contains no evidence that St. John's undertook any action to alter the condition of the ice outside Smith-Glynn.  Here, the summary judgment

Therefore, as a matter of law, St. John's was under no duty to exercise reasonable and ordinary care to prevent Amanda's fall.

While this outcome under the Massachusetts rule as it has been applied in Missouri was conceded by the Medlocks' counsel during oral argument, he made clear that the thrust of the Medlocks' appeal was to offer this Court an invitation to discard the Massachusetts rule. The better approach, he argues, is to extend the general duty to use reasonable care to prevent injury to the removal of all accumulations of snow and ice, without regard to whether they occurred "naturally as a result of general weather conditions within the community."[6]

In considering this invitation, we recognize that the Massachusetts rule has a long-standing, well-established history in Missouri law. What we have referred to as the Massachusetts rule made its debut in *Woodley v. Bush*, 272 S.W.2d 833 (Mo.App. 1954), a landlord-tenant case. *See also Maschoff v. Koedding*, 439 S.W.2d 234, 237 (Mo.App. 1969) (attributing the adoption of the Massachusetts rule in Missouri to *Woodley*). Shortly thereafter, in *Everett v. Wallbrun*, 273 S.W.2d 751 (Mo.App. 1954), the rule was expanded to include invitors and employers. In adopting this rule, the *Woodley* court noted that, as recognized by our Supreme Court, municipalities already enjoyed the following duty-of-care exception:

> "A city is not required to remove snow and ice from its sidewalks where such condition is general throughout the city. It is, however, the duty of the city to exercise reasonable care to keep its sidewalks free from dangerous conditions, which are not classed as a generally dangerous condition, produced by natural causes such as snow and ice."

record only contained evidence that St. John's had a policy to remove snow and ice, which, as already stated, was insufficient to invoke the exception to the Massachusetts rule. *See Richey*, 252 S.W.3d at 252.
[6] Many of the policy arguments advanced by counsel for the Medlocks in support of this argument can be found in the decision *Papadopoulos v. Target Corp.*, 930 N.E.2d 142 (Mass. 2010), wherein the supreme court of the state for which the Massachusetts rule was informally named abrogated its version of the rule.

*Woodley*, 272 S.W.2d at 835 (quoting *Walsh v. City of St. Louis*, 142 S.W.2d 465, 466 (Mo. 1940)).

As observed in *Woodley* and reiterated and expanded upon in *Everett*, municipalities, landlords, invitors, and employers all share the same duty with respect to their property—to exercise reasonable and ordinary care to remedy dangerous conditions. *See Woodley*, 272 S.W.2d at 835; *Everett*, 273 S.W.2d at 752–53. Therefore, "[t]he degree of care required being the same in the case of landlord, municipal corporation, invitor, and employer, it follows that the liability of one is no greater than that imposed upon the other." *Everett*, 273 S.W.2d at 753. Relying upon *Walsh* in its analysis, the court concluded that "[t]he hazards which all are required to protect against must be to some extent greater than those common to the general community[.]" *Id.*

As the foregoing makes clear, the Massachusetts rule, as applied in Missouri, harmonizes the liabilities of landlords, municipalities, invitors, and employers—all of which share the same general duty of care. The passage of time has not made this rationale any less sound today than it was when *Woody* and *Everett* were decided in 1954. In our view, if the Massachusetts rule were to be reconsidered as it applies to invitors, as in this case, such reconsideration should also include examination of the municipalities exception upon which the rule's adoption was based. However, this Court has no authority to review the exception for municipalities as laid out in *Walsh*, 142 S.W.2d at 466, because we are bound by the pronouncements of our Supreme Court. *See* MO. CONST. art. V, § 2. We, therefore, decline the Medlock's invitation to discard the Massachusetts rule. The Medlocks's point on appeal is denied.

<u>Decision</u>

The judgment of the trial court is affirmed.

GARY W. LYNCH, J. - Opinion author

DON E. BURRELL, J. - concurs

MARY W. SHEFFIELD, J. - concurs