In the Missouri Court of Appeals
 Eastern District
 DIVISION THREE

COLLEEN O’DONNELL, ) No. ED108986
 )
 Appellant, ) Appeal from the Circuit Court of
 ) St. Louis County
vs. ) 18SL-CC02101
 )
PNK (RIVER CITY), LLC, D/B/A RIVER ) Honorable Joseph S. Dueker
CITY CASINO & HOTEL, AND TOTAL )
LOT MAINTENANCE , )
 )
 Respondents. ) Filed: March 9, 2021

Angela T. Quigless, P.J., Kurt S. Odenwald, J., and James M. Dowd, J.

 Introduction

 Appellant Colleen O’Donnell appeals the trial court's grant of two summary judgments in

this case, one in favor of Respondent PNK (River City), LLC d/b/a River City Casino & Hotel

and the other in favor of Respondent Total Lot Maintenance (TLM) on her personal injury

claims arising from a December 16, 2016 fall due to accumulating ice on River City's premises

during a winter storm. We review each summary judgment motion separately and we likewise

limit our consideration to the summary judgment record created separately pursuant to Rule

74.04(c) as to each motion.
 We affirm the judgment in favor of River City because pursuant to the Massachusetts

Rule,1 the undisputed material facts demonstrate that River City did not owe O'Donnell a duty of

care in that the freezing precipitation that caused her fall was a natural accumulation general to

the community so River City is entitled to judgment as a matter of law. As to the judgment in

favor of TLM, we reverse and remand because the material facts are genuinely disputed whether

TLM assumed the duty by agreement to treat or remove the ice pursuant to its contract with

River City such that it is not entitled to judgment as a matter of law but those factual issues are

for a jury to decide.2

 Background

 The facts giving rise to the underlying action in this case stem from a slip and fall at the

River City Casino during a winter ice storm on December 16, 2016. That afternoon, O’Donnell,

a River City customer, arrived before any frozen precipitation or accumulation had begun. After

2 or 3 hours at the casino, O'Donnell decided to leave. At approximately 4:13 p.m., she exited

the north doors, took a few steps and then slipped and fell on a patch of ice on the sidewalk and

sustained injuries. The freezing precipitation had not been shoveled, scraped, salted, or altered in

any way.

 On May 24, 2018, O’Donnell sued River City alleging it knew or could have known of

unreasonably dangerous condition of the premises and negligently failed to exercise ordinary

care to remove or treat the ice accumulation, or to warn its invitees on the premises of the

dangerous condition. After O'Donnell learned during discovery that River City had a contract

with TLM to provide snow removal and surface treatment services for the premises, O’Donnell

added TLM as a defendant and alleged that TLM negligently breached its duty to keep the

1
 Richey v. DP Props., LP, 252 S.W.3d 249, 251–52 (Mo. App. E.D. 2008).
2
 O’Donnell’s motion to file exhibits out of time was taken with this appeal and granted.
 2
premises reasonably safe from ice accumulation or to warn invitees such as O'Donnell of the

dangerous conditions on the premises.

1. The summary judgment record as to River City’s motion.

 On October 4, 2019, River City moved for summary judgment against O’Donnell.

Pursuant to Rule 74.04, River City filed with its motion a statement of uncontroverted facts. In

addition to the basic facts outlined above, both parties admitted the following facts were

undisputed and these constitute the relevant summary judgment record governing our review of

River City’s motion:

 a. River City operates the River City Casino & Hotel, located at 777 River City

 Casino Boulevard in St. Louis County, Missouri;

 b. On December 16, 2016, an ice storm hit the St. Louis area, including the area

 around River City’s premises;

 c. The storm brought freezing rain and caused ice to accumulate around River

 City’s premises, including in the area where O'Donnell fell;

 d. At the time O'Donnell fell, River City had not put down any salt, ice melt,

 warning cones, or caution tape or taken any measures to remove, treat, or alter the

 natural state of the ice that had accumulated as a result of the freezing rain around

 River City’s premises and in the area of O'Donnell's fall;

 e. Before O'Donnell fell, River City monitored the falling and accumulating ice and

 knew that ice was accumulating on the walkways including the walkway where

 O'Donnell fell;

 f. Before O'Donnell fell, River City warned some customers of the slick ice, helped

 some to their vehicles, and tried to protect others from falling;

 3
 g. Before O'Donnell fell, River City twice requested that TLM come to treat and

 remove the ice from River City's premises.

2. The summary judgment record as to TLM’s motion.

 On November 25, 2019, TLM filed its own summary judgment motion largely mimicking

River City's motion and statement of uncontroverted material facts. The summary judgment

record applicable to TLM's motion, which was developed pursuant to Rule 74.04(c) and governs

our review as to TLM's motion, consists of the foregoing facts outlined in (a) - (g) above, plus

the following additional facts and materials admitted by both O'Donnell and TLM:

 h. River City first summoned TLM to the Casino at 4:10 p.m;

 i. TLM told River City it would take a TLM crew one hour to arrive on site;

 j. At the time of O'Donnell's fall, River City and TLM had a contract in force

 whereby TLM agreed to provide snow and ice removal and treatment services to

 River City;

 k. The contract provided: (i) that TLM was authorized "to provide snow plowing

 and/or salting service" at River City, (ii) that the services were categorized as

 snow removal services, sidewalk services, and salting services, (iii) that "[a]t an

 accumulation of 1/8 [inch] of sleet, freezing rain and snow, salt trucks will be

 dispatched. Events will start with chemical application to keep ice and snow

 from bonding to the pavement," (iv) that "[i]f snow or ice is forecasted for A.M.

 rush hour, lots will be pre-salted. These same weather conditions will apply to the

 dispatching of sidewalk crews. This priority service is to protect your employees,

 clients and customers," and (v) that under the special instructions portion of the

 contract the phrase "no sidewalk service unless requested" appears.

 4
3. The March 17, 2020 grant of both summary judgment motions.

 On January 9, 2020, the trial court heard arguments on both motions for summary

judgment, took the motions under advisement pending further discovery, and granted O’Donnell

until March 4, 2020 to file a supplemental response to the motions. No supplemental response

was filed3 and on March 17, 2020, the trial court granted both motions for summary judgment.

O’Donnell filed a motion to reconsider, which was denied. This appeal follows.

 Standard of Review

 The Supreme Court has weighed in on the standard of review that should be followed for

appeals of summary judgment:

 The trial court makes its decision to grant summary judgment based on the pleadings,
 record submitted, and the law; therefore, this Court need not defer to the trial court's
 determination and reviews the grant of summary judgment de novo. In reviewing the
 decision to grant summary judgment, this Court applies the same criteria as the trial court
 in determining whether summary judgment was proper. Summary judgment is only
 proper if the moving party establishes that there is no genuine issue as to the material
 facts and that the movant is entitled to judgment as a matter of law. The facts contained
 in affidavits or otherwise in support of a party's motion are accepted as true unless
 contradicted by the non-moving party's response to the summary judgment motion. Only
 genuine disputes as to material facts preclude summary judgment. A material fact in the
 context of summary judgment is one from which the right to judgment flows.

 ....

 The record below is reviewed in the light most favorable to the party against whom
 summary judgment was entered, and that party is entitled to the benefit of all reasonable
 inferences from the record. However, facts contained in affidavits or otherwise in
 support of the party's motion are accepted as true unless contradicted by the non-moving
 party's response to the summary judgment motion.

Goerlitz v. City of Maryville, 333 S.W.3d 450, 452-53 (Mo. banc 2011) (internal quotation marks

and citations omitted); Green v. Fotoohighiam, 606 S.W.3d 113, 115-16 (Mo. banc 2020).

3
 Respondents consented to O’Donnell receiving two additional weeks to file her supplemental
responses, but O'Donnell did not notify the trial court of those communications or otherwise
request the extension.
 5
 “Facts come into a summary judgment record only via Rule 74.04(c)’s numbered-

paragraphs-and-responses framework.” Jones v. Union Pac. R.R. Co., 508 S.W.3d 159, 161

(Mo. App. S.D. 2016); see also Fotoohighiam, 606 S.W.3d at 118. If the court were to look

beyond the facts pled on the Rule 74.04 record to the trial court's full record it would be

impermissibly acting as an advocate for a party. Lackey v. Iberia R-V Sch. Dist., 487 S.W.3d 57,

62 (Mo. App. S.D. 2016). “Thus, when reviewing a summary judgment, we may only review the

undisputed material facts established by the process set forth in Rule 74.04(c); we do not review

the entire trial court record.” Alvis v. Morris, 520 S.W.3d 509, 512 (Mo. App. S.D. 2017).4

 Where the defending party is the movant, it may establish a right to judgment by

showing: (1) facts negating any one of the non-movant's elements; (2) that the non-movant, after

an adequate period of discovery, has not been able and will not be able to produce evidence

sufficient to allow the trier of fact to find the existence of any one of the non-movant's elements;

or (3) that there is no genuine dispute as to the existence of each of the facts necessary to support

the movant's properly-pleaded affirmative defense. ITT Commercial Fin. Corp. v. Mid-Am.

Marine Supply Corp., 854 S.W.2d 371, 381 (Mo. banc 1993).

 Discussion

I. Pursuant to the Massachusetts Rule, the undisputed material facts demonstrate that

 River City did not owe O'Donnell a duty of care to protect invitees from naturally

 occurring ice accumulation as it fell at the time of her fall, so River City is entitled to

 judgment as a matter of law.

 To establish her claim against either defendant, O’Donnell's burden is to prove that each

defendant owed her a duty of care, a breach of that duty, and that her damages were caused by

4
 O’Donnell’s briefs reference certain facts which are not part of River City's summary judgment
record because they were not made part of that record pursuant to the dictates of Rule 74.04(c),
so we have disregarded those facts.
 6
the breach. Hoffman v. Union Electric Co., 176 S.W.3d 706, 708 (Mo. banc 2005) (internal

citations omitted). The existence of a duty is a question of law for the court based on the court's

determination whether the facts pleaded or proven show "the existence of a relationship between

the plaintiff and defendant that the law recognizes as the basis of a duty of care." Bunker v.

Association of Missouri Elec. Cooperatives, 839 S.W.2d 608, 611 (Mo. App. W.D. 1992).

 While premise liability principles typically govern slip and fall claims against owners and

possessors of property,5 Missouri has adopted an exception, commonly known as the

Massachusetts Rule, that imposes “no duty to remove snow or ice that accumulates naturally and

is a condition general to the community.” Richey v. DP Props., LP, 252 S.W.3d 249, 251–52

(Mo. App. E.D. 2008); Willis v. Springfield Gen. Osteopathic Hosp., 804 S.W.2d 416, 419 (Mo.

App. S.D. 1991). Additionally, Missouri courts have held “a property owner does not have a

duty to remove, from its open-air parking lot, freezing rain, sleet, or snow, as it is falling” and

“[t]o hold that a duty exists to make a parking lot safe as precipitation falls from the sky would

be to create a duty which would be virtually impossible to perform.” Milford v. May Department

Stores, 761 S.W.2d 231, 232-33 (Mo. App. E.D.1988) (quoting Restatement (Second) of Torts §

4, comment a (1965). However, as exceptions to the Massachusetts Rule, our courts have found

a duty in cases where the property owner voluntarily assumed the duty to remove snow or ice

either by agreement or through a course of conduct over a period of time. Otterman v. Harold's

Supermarkets, Inc., 65 S.W.3d 553, 556 (Mo. App. W.D. 2001).

 River City argues that the undisputed facts mandate the application of the Massachusetts

Rule such that River City owed no duty to O’Donnell as a matter of law to treat or clear the

5
 Steward v. Baywood Villages Condominium Ass’n, 134 S.W.3d 679, 682 (Mo. App. E.D.
2004); M.A.I. 22.03.

 7
naturally occurring accumulation of ice that was a general condition in the St. Louis area. We

agree because the undisputed facts were that O’Donnell slipped and fell on naturally

accumulating ice on River City’s premises as she was leaving the casino while freezing rain was

still falling, that the icy conditions were general throughout the community, and that River City

had taken no action to alter the physical condition of the ice, all of which are sufficient facts to

warrant imposition of the duty-eliminating Massachusetts Rule.

 For her part, O’Donnell argues that based on one or both of the exceptions to the

Massachusetts Rule, River City owed her a duty of care because River City either (a) assumed a

duty through its course of conduct or (b) assumed a duty by agreement. On the summary

judgment record before us, O'Donnell has failed to establish that either exception applies here.

A. Assumption of duty by course of conduct.

 O'Donnell claims that River City assumed a duty to her with respect to the dangerous

condition caused by the falling and accumulating ice on its premises based on its course of

conduct in the hours and minutes before she fell. Specifically, she points to the evidence that

River City (1) closely monitored the approaching ice storm and was well-aware of the weather

conditions, (2) warned other patrons of the dangerous conditions, (3) assisted some patrons to

their vehicles, and (4) twice summoned TLM to treat the ice.

 However, for a defendant to be deemed to have assumed a duty in the context of the

Massachusetts Rule, our courts have required that the defendant take some willful action to alter

the condition of the snow or ice on its premises. Otterman, 65 S.W.3d at 555; Medlock v. St.

John's Health Sys., Inc., 426 S.W.3d 35, 39 n.5 (Mo. App. S.D. 2014); Richey, 252 S.W. at 252

(finding no duty was assumed where defendant “did nothing to alter the condition of the steps

where [plaintiff] fell.”) In Otterman, although the plaintiff slipped on an untreated ramp, the

 8
defendant’s removal of snow and ice on the adjacent parking lot was a sufficient course of

conduct to trigger the exception. 65 S.W.3d at 555. So, this Court reversed the trial court’s

summary judgment finding a genuine issue of material fact as to whether the defendant

voluntarily assumed a duty to clear the snow and ice. Id.

 River City did not spread salt or snow melt and did not shovel, scrape, or plow any of its

premises before O'Donnell fell. And while it took other actions including warning customers,

helping customers to their vehicles, and summoning TLM, no Missouri case has found the

course-of-conduct exception to the Massachusetts Rule in the absence of actual alteration of the

snow or ice on the part of the defendant. Point denied.

B. Assumption of duty by agreement.

 Under the second exception to the Massachusetts Rule, a duty to remove naturally

occurring snow or ice that is a general condition of the community exists when the defendant has

voluntarily assumed such a duty pursuant to an agreement. Alexander v. Am. Lodging, Inc., 786

S.W.2d 599, 601 (Mo. App. W.D. 1990); Richey, 252 S.W.3d at 252. “The existence of a

snow removal policy alone does not create a duty to remove snow or ice.” Medlock, 426 S.W.3d

at 39 n. 5.

 O’Donnell argues that River City voluntarily assumed a duty to remove the snow and ice

by way of its contract with TLM. While it is properly part of the River City summary judgment

record that “[p]rior to Plaintiff’s fall, Defendant’s employees twice contacted co-defendant Total

Lot Maintenance and requested Total Lot Maintenance clear the area,” the contract itself is not

part of the Rule 74.04(c) record. And while it is true that we review the record in the light most

favorable to O'Donnell as the non-moving party giving her the benefit of all reasonable

inferences, the fact that River City summoned TLM twice to treat and clear the ice is insufficient

 9
to support the inference that there was a contract, much less what the terms of the contract were,

and whether River City assumed a duty to O'Donnell with respect to the snow and ice pursuant to

those terms. In short, on this summary judgment record, O'Donnell has failed to establish as a

matter of disputed fact that River City voluntarily assumed a duty by agreement in order to avoid

application of the Massachusetts Rule.6 Point denied.

II. Since it is a matter of genuinely disputed fact whether TLM assumed the duty by

 virtue of its contract with River City to remove or otherwise treat the snow and ice

 on River City’s premises, TLM is not entitled to summary judgment on the Rule

 74.04(c) record before us.

 This Court has previously recognized that in the context of the Massachusetts Rule, a

snow-removal company, like TLM here, may voluntarily assume the duty to take action with

respect to snow and ice, even naturally occurring snow and ice that constitutes a general

condition in the area, by entering into a contract to provide such services. Richey, 252 S.W.3d at

252 (citing Willis, 804 S.W.2d at 419). In Richey, we explained that whether the defendant has

assumed the duty "by agreement," is a matter of contractual interpretation to determine whether a

duty to perform arose under the terms of the contract. Id. Under the Richey contract, the

defendant's duty to perform snow removal services on the premises was triggered either upon the

landowner’s request or in the event 2 inches of snow fell. Id. At the time of the plaintiff's fall, 2
 6
 O’Donnell also argues that this Court should circumvent the Massachusetts Rule based
upon River City’s status as a hotel operator. Courts in Missouri have applied the Massachusetts
Rule to hotel operators and held they too owe no duty to remove naturally occurring snow and
ice, general to the community. Paikowsky v. Davidson Hotel Co. LLC, No. 4:08CV783 TIA,
2010 WL 2628379 (E.D. Mo. June 25, 2010) (Federal Court interpreting Missouri law holding a
hotel operator owed no duty to remove naturally occurring ice from its parking lot). While under
some circumstances a hotel operator may owe a heightened duty of care to its guests to warn of
dangerous conditions, we are unpersuaded that River City's status as a hotel operator excuses it
from the Massachusetts Rule due its already-broad application in Missouri "to landlords,
municipal corporations, inviters and employers.” See Richey, 252 S.W.3d at 251. Point denied.

 10
inches of snow had yet to fall and the landowner had not requested the defendant's snow removal

services. Id. Therefore, we found that because no triggering event occurred under the contract,

the defendant did not assume a duty to remove the snow and ice and the assumption-of-duty-by-

agreement exception did not apply. Id.

 The circumstances here are distinct from the Richey case in one critical way - the facts on

the record before us remain in dispute whether TLM's contractual duty to provide snow and ice

removal and treatment services had been triggered in this case. Under the River City-TLM

contract, TLM's duty to clear and treat ice at River City was triggered upon the "accumulation of

1/8 inch of sleet, freezing rain and snow…” While whether an eighth inch of freezing

precipitation had fallen is not explicit in the record, the reasonable inference7 from the record

appears to make that at a minimum a matter of disputed fact. The amount of freezing

precipitation that had fallen before O'Donnell fell, during what the parties agreed was an historic

ice storm, was enough for River City to have activated security protocols to warn customers and

physically help them to their vehicles and to have summoned TLM twice to treat and remove the

ice. In sum, whether TLM's duty had been triggered is a disputed fact the jury should decide.

 An additional matter more appropriate for the jury to decide concerns the dispute in the

record between certain provisions of the River City - TLM contract and testimony by a TLM

representative that the parties orally modified the contract such that TLM was only to dispatch to

River City when requested by River City. This testimony is in conflict with the contract

language that requires TLM to dispatch to River City irrespective of any request upon the

accumulation of an eighth inch of freezing precipitation.

7
 Goerlitz, 333 S.W.3d at 452-53 (The record below is reviewed in the light most favorable to the
party against whom summary judgment was entered, and that party is entitled to the benefit of all
reasonable inferences from the record.)

 11
 Therefore, TLM has failed to establish as a matter of undisputed fact that its duty to

appear at River City and treat or remove the ice had not been triggered such that it has failed to

establish its right to judgment as a matter of law and the summary judgment entered in its favor

is reversed.

III. Abrogation of the Massachusetts Rule requires Missouri Supreme Court action.

 Finally, O’Donnell implores this Court to abrogate the Massachusetts Rule claiming it is

outdated. Admittedly, the Massachusetts Rule, in certain circumstances, may incentivize

landowners and occupiers not to address dangerous conditions of snow and ice when those are

natural accumulations and represent a general condition in the area. To do so, so the argument

goes, would assume a duty that otherwise does not exist and open themselves up to liability.

 Nevertheless, we decline O'Donnell's request. When Missouri first adopted the

Massachusetts Rule in Woodley v. Bush, 272 S.W.2d 833 (Mo. App. 1954), a personal injury

claim brought by a tenant against a landlord, the court held that “[t]his appears to be reasonable

for where the condition is one general to the community it creates a natural hazard to everyone

who ventures out at such time. The condition is brought about by no one and no one's efforts can

appreciably lessen the danger present… Thus any effort of the landlord would in fact only

diminish the natural hazard to a very negligible degree.” Id. at 835. Since then, Missouri courts

have considered but declined to abrogate the Massachusetts Rule:

 “[T]he Massachusetts rule, as applied in Missouri, harmonizes the liabilities of landlords,
 municipalities, inviters, and employers—all of which share the same general duty of care.
 The passage of time has not made this rationale any less sound today than it was
 when Woody and Everett were decided in 1954. In our view, if the Massachusetts rule
 were to be reconsidered as it applies to inviters, as in this case, such reconsideration
 should also include examination of the municipalities exception upon which the rule's
 adoption was based. However, this Court has no authority to review the exception for
 municipalities as laid out in Walsh, 142 S.W.2d at 466, because we are bound by the
 pronouncements of our Supreme Court. See Mo. Const. art. V, § 2.”

Medlock, 426 S.W.3d at 40.
 12
 We remain bound by the pronouncements of our Supreme Court. Point denied.

 Conclusion

 The trial court’s grant of summary judgment as to River City is affirmed. The trial

court’s grant of summary judgment as to Total Lot Maintenance is reversed and remanded.

 ___________________________
 James M. Dowd, Judge

Angela T. Quigless, P.J., and
Kurt S. Odenwald, J., concur.

 13